. FREEMAN P. LANE and Another v. WILLIAM D. HALE.

December 20, 1899.

Nos. 11,836—(134).

**Insolvent Estate—Compensation of Attorney of Creditor.**

To justify the allowance of compensation in insolvency proceedings out of the trust estate to a creditor who, acting alone and independently of the receiver or assignee, conducts proceedings for the purpose of securing and obtaining for the estate property which might otherwise become lost, it must appear that the services of such creditor in that behalf were not only necessary to the protection of such property, and resulted beneficially to the estate, but that property, or some valuable right or benefit, was thereby secured and preserved which would otherwise have been diverted and lost; that solely by reason of the services and exertions of such creditor such property or valuable right or benefit was saved to the estate.

In the matter of the receivership of the American Savings & Loan Association, pending in the district court for Hennepin county, Freeman P. Lane and Matthew Gallagher applied for an order allowing them $2,500 for services rendered to the shareholders of the association in procuring bidders for its real estate and for services rendered in court. The court, Elliott, J., made an order denying the application, and they made a motion for modification of the order, which was denied. From the order denying the application, as well as from the order denying modification thereof, the applicants appealed. Affirmed.

*C. J. Cahaley, Matthew Gallagher* and *Freeman P. Lane,* for appellants.

*Hay & Van Campen,* for respondent.

BROWN, J.

The American Savings & Loan Association, a corporation, became insolvent, and William D. Hale was appointed receiver thereof by the district court of Hennepin county on June 18, 1896. He duly qualified, and has been at all times since, and still is, such receiver. He employed as his attorneys and legal advisers the firm

of Hay & Van Campen, who appeared for him in all matters and on all occasions when necessary or proper.

On February 3, 1899, said district court made an order authorizing the receiver to advertise for and receive bids for the real estate belonging to the insolvent association, and report the same, if any were received, to the court on March 18, 1899. At the hearing on that day one bid of $85,000 was made. The stock of the association amounted to $1,100,000. The appellants, Lane and Gallagher, representing stockholders owning stock of the value of $1,100, appeared, and opposed the acceptance of the bid, and procured an adjournment of the matter until April 8. The receiver and his attorneys also opposed the acceptance of the bid. There were several subsequent adjournments, which were applied for and requested by appellants, and the matter came on for final hearing on April 21. At this hearing a bid for the property of something more than $38,000 over and above the first bid was offered by the same persons, and accepted by the court. The appellants appeared at all the hearings upon the subject of the sale of the property, and rendered services in procuring other and more favorable bids than the one first offered, but it does not appear that they had anything to do with obtaining the bid finally accepted.

Appellants made application to the court below for an allowance of compensation out of the trust property, claiming that, as their services, though rendered at the instance and request of shareholders or creditors, inured to the benefit of the trust estate, the value thereof was a proper expense in the administration of the trust. The court denied the application, and subsequently denied appellants' motion for a modification of such order. Both orders are appealed from.

To justify the allowance, out of trust funds, of compensation to a creditor who appears and conducts proceedings, independently of the receiver or assignee, for the purpose of obtaining and saving to the trust estate property which might otherwise become lost, it must appear not only that such services were necessary to the protection of such property, and resulted beneficially to the estate, but that property or some valuable benefit was thereby secured or preserved which would not otherwise have been realized or ob-

tained. It must appear that the property or benefit so about to be lost to the estate was saved thereto solely by the services of such creditors. It is not sufficient that the services were beneficial, or materially aided in preserving the estate. It must further appear and be shown that property or benefits belonging to the estate were secured solely by such services, which would otherwise have been diverted or lost. This may be shown by evidence that the receiver or assignee was neglecting his duties, or for any reason was prevented from instituting timely proceedings to protect the estate.

The contention on the part of the appellants is that they were solely instrumental in preventing the acceptance by the court of the first offer made for the property, and in bringing about the last offer, whereby about $38,000 was realized to the estate over and above the first offer. Unless appellants' contention in this respect can be sustained, they are not entitled to compensation. It is the duty of the assignee or receiver in proceedings of this kind to protect the rights of all interested parties, and it must be assumed, in the absence of some showing to the contrary, that he will do so. By denying appellants' application for allowance of compensation the court below must be taken to have found that there was no failure of duty on the part of the receiver, and that there was no necessity for the interference of appellants. And, to find the contention of appellants to be true, we must necessarily find that it conclusively appears from the record that the court below was in error; that the receiver was neglecting his duties; that his attorneys were neglecting their duties; and, further, that the court below was about to make an order accepting the bid of $85,000 for the property of the trust in the face of the fact that all parties interested—the appellants in behalf of creditors, and the receiver and his attorneys— were protesting against its acceptance; and that, but for the objections and labors of appellants, such order would have been made.

We have examined the record with care and patience, and are unable to reach any such conclusion. The receiver and his attorneys appeared at all hearings before the court, expressly opposed the acceptance of the first bid for the property, and at all times kept the court fully advised as to the condition and value of the estate. There is no suggestion of fraud or collusion between them and any

of the bidders for the trust property, and we are unable to find any neglect of duty on their part. When the action of the receiver and his attorneys with respect to the acceptance of the first offer for the property was identical with that of appellants, it cannot, in reason, be said that the appellants' objections alone prevented the acceptance of the offer. Indeed, the record will not justify the conclusion that the court below intended to accept it at all. At least it does not conclusively so appear. The natural inference would be, in view of the fact that all interested parties objected thereto, that his honor below would have rejected the bid. At any rate, appellants have failed to show that they were the sole cause of its rejection, or that the higher bid was due solely to their actions.

We agree with counsel for appellants that their clients rendered valuable services in this matter, and ought to receive compensation therefor, but we cannot agree with them that such compensation should come out of the trust estate. As already stated, it is the duty of the assignee or receiver in proceedings of this kind to protect the rights of all interested parties, and to justify the allowance of compensation out of the trust funds to third parties who volunteer their services in that behalf it must be shown by them that the assignee or receiver was neglecting his duties, and that, in consequence of such neglect, such services by them were necessary to protect the estate. Any other rule would work disastrously to trust estates. We cannot open the door to claims of this kind. The rule allowing compensation in such cases as heretofore stated must be followed and applied. Appellants have not brought their case within that rule, and we have no alternative but to affirm the orders appealed from.

Orders affirmed.

CANTY, J. (dissenting).

I cannot concur in the foregoing opinion. Neither can I concur in the proposition that it was necessary for appellants to show that they were the sole cause of the rejection of the first bid, or that the higher bid was due solely to their action. This is equivalent to saying that, no matter how slight and pro forma the assistance of the receiver or his attorney was, and no matter how little he con-

tributed to the result, if he contributed anything at all, the creditors' attorney, who has borne the brunt of the battle, is entitled to nothing out of the fund which he has been the main cause of saving or recovering.

In order to understand this case, the facts should be stated. The real estate to be disposed of by the receiver was scattered over many states, much of it being in Minnesota, Michigan, Missouri, Nebraska, Kansas, South Dakota, Wisconsin, and Washington. In February, 1899, the receiver appraised all of this real estate at the total sum of $425,780. Shortly afterwards the receiver employed the firm of Kobe & McKinnon, of Chicago, to appraise the property, and they appraised it at the total sum of $150,000. On February 3, 1899, the court made an order that the receiver receive bids for any and all of said real estate, and report the same to the court on March 18, 1899, at 9 a. m., and that all persons interested show cause at that time why any bids so received should not then be accepted. The receiver appeared at that time by Hay & Van Campen, his attorneys, reported a bid of Kobe & McKinnon of the lump sum of $85,000 for all of said real estate, and advised that the bid be rejected. Kobe & McKinnon appeared by their attorneys, Russell & Jamison, and moved that the bid be accepted. Certain of the stockholder creditors appeared by Mr. Lane and Mr. Gallagher, their attorneys, opposed the acceptance of the bid, and moved for a continuance for one month in order to get time to procure higher bids. The record proceeds:

"That motion was opposed by Judge Russell, and denied by Judge Elliott. Thereupon Judge Russell made a motion for continuance until April 8, 1899, and that motion was granted. Judge Russell, as one of the attorneys for Kobe & McKinnon, opposed each and every continuance had after April 8, 1899."

On April 8 the parties again appeared, and Lane and Gallagher moved for a further continuance in order to procure bidders. The court continued the matter to April 15. On the latter date the parties again appeared. Mr. Lane stated that he had found a bidder in Chicago who would offer $110,000 for the properties, but advised the rejection both of this bid and the Kobe & McKinnon bid as being too low. After a strenuous contest over the matter, Lane

moved for a further continuance, and the court granted one, but for only three days,—to April 18. On the latter date the parties again appeared. Lane and Gallagher moved for a further continuance, and the court granted a continuance, but for one day only, —to the 19th. The same performance was gone through on that day, and a continuance obtained to the next day, April 20. On the latter day a syndicate of Minneapolis men appeared, and bid $110,000 for the real estate. Thereupon Kobe & McKinnon and the syndicate made successive bids against each other until the syndicate bid the sum of $123,000. The matter was then continued until the next day, when Kobe & McKinnon bid $123,025, and, with the consent of all parties, the bid was accepted. On April 18 the receiver filed his objections, in which he made a strong showing against accepting the bid of Kobe & McKinnon made on that day, but it does not appear that these attorneys did any more after that except appear formally at each hearing until April 20, when they consented to the acceptance of the bid of $123,025. In the meantime the contest went on between Lane and Gallagher on the one hand and the attorneys of Kobe & McKinnon on the other hand. The evidence is conclusive on these points, and also on the point that Lane and Gallagher, after strenuous and arduous efforts, procured the syndicate to organize and make the bid, which compelled Kobe & McKinnon to raise their bid $38,025.

Possibly, the evidence is not conclusive that the court ever intended to accept the original bid of Kobe & McKinnon. We cannot tell what the court had in his mind. But actions are louder than words. Every one interested was opposing the acceptance of this bid except the bidders themselves, and, if the court was not seriously contemplating the acceptance of it, why did he not reject it during all these 32 days of incessant and strenuous contest? Why did he so often refuse to continue the matter for more than one day or three days at a time if he was not exceedingly anxious to hang on to this bid, and was not seriously contemplating the acceptance of it? He knew that it would be practically impossible to get other bidders for this large amount of widely scattered property in one day or in three days. In my opinion, the evidence is

conclusive that any intelligent attorney in the position of Lane and Gallagher would be bound to understand from the attitude of the court that there was imminent danger that this bid would be accepted, and that the only way to defeat the acceptance of it was by procuring higher bids. No prudent attorney would have done otherwise. Under the circumstances, the receiver and his attorneys would have been amply warranted in seeking other bidders with all the haste and diligence possible. They did not do so, and should now divide with Lane and Gallagher the fees for this part of the administration of the estate. I am therefore of the opinion that the orders appealed from should be reversed.