In re GILLASPIE.

(District Court, N. D. West Virginia.   September 16, 1911.)

1. BANKRUPTCY (§ 482*)—ATTORNEYS FOR PETITIONING CREDITORS—INVOLUNTARY PROCEEDINGS.

Since involuntary proceedings in bankruptcy can only be brought by unsecured creditors, and the fund which they can reach is only that which arises after either the payment of existing liens or from a sale of the property subject to the liens, their attorneys, instituting such proceedings, cannot be allowed compensation out of funds necessary to pay off the liens or prior to the satisfaction of lien creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

2. BANKRUPTCY (§ 482*)—SALE OF PROPERTY—EXISTING LIENS—COSTS.

Where there is reason to believe that a bankrupt's property may sell for an excess over existing liens, but it turns out that it does not, the court may charge the actual costs of the suit and expenses of sale against the fund realized by the lienholders, but such allowance cannot extend to compensation to attorneys instituting the suit for unsecured creditors who have realized nothing.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

3. BANKRUPTCY (§ 22*)—COURTS—EQUITY JURISDICTION.

Bankruptcy courts are courts of equity, and governed by equity rules, except so far as otherwise expressly provided by Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 22.*]

4. ATTORNEY AND CLIENT (§ 155*)—EMPLOYMENT—FEES—EQUITY.

Since the relation of attorney and client is purely personal, depending on personal contract, courts of equity will never attempt to fix the compensation due the attorney in any ordinary litigation, but will leave the parties to an action at law.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 155.*]

5. ATTORNEY AND CLIENT (§ 171*)—ATTORNEY'S LIEN—NOTICE.

An attorney has a charging lien not recognized by the common law, but created generally either by statute or judicial legislation, to sustain which notice is required.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. § 171.*]

6. ATTORNEY AND CLIENT (§ 182*)—CHARGING LIEN—EQUITY RIGHT.

An attorney's charging lien is an equitable right to be paid for services out of the proceeds of the judgment obtained by his labor and skill; the attorney to the extent of such services being regarded as an equitable assignee of the judgment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. § 182.*]

7. ATTORNEY AND CLIENT (§ 171*)—POSSESSORY LIEN—DEFINITION.

An attorney's possessory lien is a right to retain property or money of his client until his fees are paid.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. § 171.*]

8. ATTORNEY AND CLIENT (§ 182*)—LIENS—SCOPE.

An attorney's retaining and charging liens apply solely to the personal relation between the attorney and his client, and may not be extended to or affect the rights of third persons who may be interested in the litigation, but who have not employed such attorney; the liens being allowed to cover only the interest of the client in the property charged, subject

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to any rights in the property which are valid against the client at the time the liens attach.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 182.*]

9. BANKRUPTCY (§ 482*)—ATTORNEYS' LIENS—IMPOSITION BY EQUITY AND BANKRUPTCY COURTS.

The only proper case where a court of equity or bankruptcy can award compensation to an attorney out of funds due to others than his client is where the attorney for one of a class has created or secured a fund and brought it into the custody of the court, which is to inure, not only to the benefit of his client, but to that of all those belonging to the class.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 482.*]

In the matter of bankruptcy proceedings of Charles D. Gillaspie. On petition to review a referee's ruling allowing compensation to petitioner's attorneys. Reversed.

W. B. Maxwell and D. H. Hill Arnold, in pro. per.

James P. Scott and Cunningham & Stallings, for excepting creditors.

DAYTON, District Judge. The whole theory upon which the bankruptcy law authorizes the allowance of fees to the attorneys for petitioning creditors is that such creditors are acting for the joint benefit of themselves and all other unsecured creditors who will, by reason of their efforts, share equally with them in the unincumbered assets of the bankrupt. It is right and just that for this reason the fund secured to common creditors should, as against such creditors equally participating in it, share the expense incurred in securing it. But it is to be borne in mind that involuntary proceedings in bankruptcy can only be brought by unsecured creditors, and the fund that they can reach is only that which may arise after either the payment of the existing liens or from the sale of the property subject to liens. It must, therefore, always be a subject of careful consideration on the part of unsecured creditors whether it will be worth their while to proceed against one whose property is heavily incumbered, for they must do so taking the risk that no surplus fund will arise from which they may realize anything with which to pay their debts or the compensation due their attorneys.

[1, 2] They can have no interest ordinarily in the funds necessary to pay off the valid subsisting liens, and certainly they cannot ask a court to pay their attorneys out of the funds due such lienholders for instituting and prosecuting a suit not calculated to benefit them, but only to diminish and lessen such lienor's vested right. It is true that it may be presumed that, if a man is bankrupt with his property incumbered with liens, a suit will have to be brought by some lienholder to marshal the liens and have sale decreed to satisfy the same. Therefore courts of bankruptcy, upon broad, equitable grounds, where there is reason to believe that the property may sell for an excess over the existing liens thereon, but it turns out that it does not, may well charge the actual costs of the suit and expenses of sale against the fund realized by the lienholders, for such costs of suit and expenses of sale would have had ordinarily to be incurred on some proceeding by them in order to sell and dispose of the property. But such allowance can-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not extend further than this, and certainly not to the extent of compensating attorneys who have instituted the suit for unsecured creditors who have realized nothing. This is apparent for the very simple reasons, first, that lienholders cannot in any proceeding in equity to enforce liens be allowed compensation, as against other lienholders, for their attorneys in the suit instituted by them to enforce such liens; second, because, if such attorney's fees be allowed, then the junior lienholder's lien may be utterly and wholly consumed at the instance of unsecured creditors instituting the bankruptcy proceeding; and, third, because attorneys' liens for fees attach only to such funds as may be secured by their effort to their clients, and those others who are in the same class with them as regards interest. A simple illustration of these sound principles may be made. Suppose A. to have real estate estimated to be worth $20,000. Against this real estate B. holds a vendor's lien for $10,000, C. a judgment lien for $5,000, and D. a trust lien for $3,000; B.'s judgment lien being second in priority and D.'s trust lien third in priority. Neither B. nor C. can have this real estate sold without under the law of this and other states where the common law and equity practice prevails, resorting to a court of equity to decree such sale, and D., under his deed of trust, can only sell the property subject to B.'s vendor's and C.'s judgment lien. This, in actual practice, is seldom done because such sales are not satisfactory; purchasers generally demanding clear titles at such sales. Therefore, under such conditions, C., too, would resort to equity to decree the sale after marshaling the liens and ascertaining their amounts, priorities, and to whom owing. Suppose C. institutes the suit upon his judgment lien to sell the property and it sells at forced sale for $18,000. Under our practice prevailing for at least a century in this state and Virginia, the court of equity will, out of the proceeds of sale, pay first the costs of suit and expenses of sale; second, B.'s vendor's lien in full; third, C.'s judgment lien in full; and, finally, the balance it will apply as a credit upon D.'s trust lien. In no event will it allow to the attorneys of C. instituting the suit compensation for services beyond the nominal docket fee taxed in the costs. To do so would be to create a new lien in favor of such attorneys not existing before the institution of the suit and give such new lien priority over D.'s vested lien existing before this new lien's creation, and which, in many cases, would absolutely deny to D. any recovery at all.

[3-8] Bankruptcy courts are courts of equity and governed by equity's rules, except so far as otherwise expressly provided by the bankruptcy statute. The relation of attorney and client is a purely personal relation, dependent, under all ordinary circumstances, upon the personal contract made between the two as to what compensation the attorney shall have for his services. Courts of equity should never attempt to fix the compensation due the attorney in any ordinary litigation. The law courts are open to enforce this class of contracts in actions of debt or assumpsit just as they are open to enforce all other contracts for services rendered, whether express or implied. The only exceptions in favor of the attorney are: First. The charging lien not recognized by the common law, but created in most of the states either

by virtue of statutes or by judicial legislation. To sustain this lien in this state notice is required to be given. Renick v. Ludington, 16 W. Va. 378. This lien may be defined to be an equitable right of the attorney to be paid for his services out of the proceeds of the judgment obtained by his labor and skill. To the extent of such services he is regarded as an equitable assignee of the judgment. Second. The possessory lien which is the attorney's right to retain the property or money of his client until his fees are paid. Both these liens apply solely to the personal relation existing between the attorney and his client, and can in no condition of affairs be extended to or affect the rights of other persons who may be interested in the litigation but who have not employed such attorney. Such liens cover only the interest of the client in the property charged, and are subject to any rights in the property which are valid against the client at the time the lien attaches. 4 Cyc. 1005, 1008, 1017.

[9] The only proper cases that can arise where courts of equity and bankruptcy as well can award compensation to an attorney out of funds due others than his client is where, as I have heretofore indicated, such an attorney for one of a class has "created" or secured a fund and brought it into the custody of the court, which fund is to inure, not alone to the benefit of his client, but to that of all those belonging to this class. In such cases the courts award compensation to the attorney out of the fund due to all, not on the theory of his having an attorney's lien, but on the broader theory that all interested in the fund should contribute ratably to the cost of "creating" or securing it. These principles are very clearly set forth in Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central R. R. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915; Harrison v. Perea, 168 U. S. 311, 18 Sup. Ct. 129, 42 L. Ed. 478; Jefferson Hotel Co. v. Brumbaugh (4th Circuit) 94 C. C. A. 279, 168 Fed. 867.

In this case it is apparent that the property of the bankrupt consists largely of real estate, such as a hotel property and a tract of coal land. It further appears that these properties are very heavily incumbered by many valid and existing liens which must be satisfied in full before the petitioning and other unsecured creditors can realize anything. The referee by his decree complained of and sought to be reviewed herein before sale of said properties and before it had been ascertained what surplus, if any, will remain for common creditors after payment of such liens, has allowed to attorneys for petitioning creditors a fee of considerable amount, payable out of the proceeds of sale when made, as against the rights of lienholders whose liens may be or may not be affected thereby. This is error, and his ruling and order must be reversed and annulled, and the cause be referred back to him with instructions to withhold action upon this petition of Maxwell and Arnold until all the property of the bankrupt shall have been sold and he has ascertained what sum will arise, after payment of all valid liens, for distribution among the common or unsecured creditors, and from this fund, and this fund only, he shall allow such sum to attorneys for the petitioning creditors as will be a reasonable compensation for the services rendered by them.