# Hechelman *v.* Geyer, Appellant.

*Corporations — Officers — Profits from sale of treasury stock — Trustees ex maleficio—Rights of stockholders—Officers' guarantee to purchase — Breach — Right of purchaser to intervene—Counsel fee.*

1. Where certain directors of a corporation were decreed by the Supreme Court to be trustees ex maleficio of the profits derived from the sale of certain treasury stock, and the lower court was directed to ascertain who the shareholders of record were at the time of such sale and what the proportionate share of each in the profits thereof was, it was not error to refuse to permit the purchaser of such stock to intervene for the purpose of asserting a superior right in the fund on the ground that the defendants had, as a condition of the sale to him, guaranteed the financial condition of the company and that it was not as represented, where it appeared that the petitioner had no contract with plaintiffs or the corporation and it was not averred that the plaintiffs knew of such contract of guarantee. Nor could such purchaser make claim on the fund as the owner of the shares of stock which he had purchased.

2. In such case the fact that defendants received none of the profits from the sale of a certain number of such shares of treasury stock, but permitted others to obtain the profits, did not relieve them of accountability as to such shares.

3. In such case the proceeding having been brought in the interest of the stockholders as a class, plaintiff's counsel were entitled to a reasonable compensation, to be charged against the whole fund. The fact that defendants were shareholders did not relieve them of the burden of bearing part of the expense of litigation against themselves where they were not sued as stockholders, nor merely as individuals, but as trustees ex maleficio.

Argued October 21, 1915. Appeals, No. 8 and 215, Oct. T., 1915, by James D. Callery and defendants, from decree of C. P. Allegheny Co., April Term, 1914, No. 562, in equity, in case of Herman W. Hechelman v. Charles Geyer, Joseph Stybr and Morris Einstein, and the·Pennsylvania Light and Power Company, a corporation. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to declare a trust and for an accounting.

The facts appear in Provident Trust Co. v. Geyer, 248 Pa. 423, and in the following opinion by SWEARINGEN, J., filed May 18, 1915:

The fund in controversy is money in the hands of Charles Geyer, Joseph H. Stybr and Morris Einstein, which they hold as trustees ex maleficio. The Supreme Court has decreed that this money should be paid to the complainants and others, who were stockholders of the Pennsylvania Light & Power Company, at the time the contract was made with James D. Callery for the sale of the stock of said corporation. We have been directed to ascertain the amount of stock then outstanding and who the stockholders were, together with their respective holdings.

Mr. James D. Callery now presents a petition alleging that he has a superior right to this fund, and he asks that he be allowed to intervene by way of cross-bill. Objection thereto is made by the complainants. The right which he seeks to litigate is based upon his contract with the defendants, Geyer, Stybr and Einstein, whereby they guaranteed that the financial condition of said corporation was as shown to him at the date of the contract, to wit, July 26, 1912. He now avers that the financial condition of the corporation was not as represented, because a large amount of accounts were worthless and a large amount of debts were unreported. This undoubtedly gives Mr. Callery a right of action against Geyer, Stybr and Einstein. This right arises by virtue of their express agreement of guaranty. But that contract was made by Geyer, Stybr and Einstein as individuals and in no other capacity. Mr. Callery has no contract with the complainants; he obtained from them exactly what they agreed to sell him, to wit, their stock at a stipulated price. It is not averred that they even knew of the contract of guaranty, when they transferred their stock. Neither has Mr. Callery any contract with the corporation of which com-

plainants are stockholders. In other words, his right of action is against Geyer, Stybr and Einstein alone, it arises solely by contract, and can be litigated only in a court of law. He and the complainants stand in no fiduciary relation; neither do he and the defendants. Consequently, we cannot perceive what interest he has in this fund, either legal or equitable, or how his claim is in any way germane to the matter in controversy. If this be true, the petition must be refused.

It has been argued that the petitioner has been guilty of laches, but since we hold that he has no equity which would justify intervention, it is not necessary to pass upon the question of laches.

Other facts appear in the following opinion of SWEARINGEN, J., filed June 18, 1915:

When the above case was decided in the Supreme Court, it was declared that this case and that of the Provident Trust Company against the same defendants, No. 1649, January Term, 1913, "should be consolidated so that the evidence can be offered before the same chancellor and the questions involved be determined upon the same record." That was in fact done at this trial.

In the opinion deciding the case of the Provident Trust Company v. Geyer, 248 Pa. 423, 428, this language was used:

"Under these facts only one logical conclusion can be reached, and that is, the shareholders of record when the treasury stock was sold, are the ones entitled to participate in the profits of the sale of the stock above its par value according to their respective holdings at the time."

In the same opinion, this court was directed to ascertain the correct number of shares of treasury stock that was sold to J. D. Callery, there being some confusion upon this subject. Necessarily, also this court was obliged to ascertain who were the stockholders of the Pennsylvania Light & Power Company and what were the holdings of each, at the date of said sale.

At the hearing, it was conceded that the number of

shares of treasury stock actually issued after the agreement with J. D. Callery, was 2,021.   But it was admitted that there was thereby an over-issue of 100 shares.   J. D. Callery has laid claim against the defendants on this account.

It was contended by defendants that they are not accountable for more than 1,709 shares; because 100 shares of said treasury stock had been sold to E. G. Lang, 100 shares to W. L. Guckert, 9 shares to H. H. Short, and 3 shares to George R. Gray, and the defendants did not receive the $14 per share upon the same.   The defendants likewise presented releases from a number of shareholders for the latters' respective interests in the fund in question.

The counsel for plaintiffs in the two bills presented a claim for compensation out of the fund raised by these proceedings.

J. D. Callery presented a claim for the amounts distributable to various record stockholders, whose stock he had purchased by different contracts than that under which he bought from the defendants, upon the ground that the rights of such shareholders had passed to him by virtue of said sales.

*     *     *     *     *     *     *     *     *     *     *

The plaintiff contends that these defendants are accountable for the profit on 1,921 shares of the stock of the Pennsylvania Light & Power Company.   The defendants now contend that they should not be required to account for the profit on the 212 shares, which were held by Lang, Guckert, Short and Gray, for the reasons, that these parties agreed to take the stock long prior to July 26, 1912, and that they, and not these defendants, received the profit thereon of $14 per share.

When these cases were formerly tried, the defendants then claimed that they had agreed to purchase all of this treasury stock, including said 212 shares, and the testimony of Einstein was that these shares were part of his allotment.   The appellate court held that there

was "no binding legal obligation upon the defendants to take and pay for the unissued stock." No more does the testimony now satisfy us that there was any binding contract upon the part of either Lang, Guckert, Short or Gray to take their respective portions of the 212 shares. The testimony does not establish any agreement with the corporation, which it could have enforced against any of these parties.

The fact, that these defendants did not receive the profit, is not sufficient to relieve them of accountability. They were trustees and were therefore bound to exercise good faith to their cestui que trust. They were bound to see that the corporation obtained the entire value of its stock, so that all the stockholders might obtain the benefits. It was not the property of the defendants, but it was that of the corporation, which they as trustees were selling. And, when they knew that the stock was worth $64 per share, they could not dispose of it for but $50 per share, upon any arrangement that did not amount to a binding contract previously made in good faith. Their doing so was a violation of their duty as trustees; and, even though they permitted Lang, Guckert, Short and Gray to obtain the profits, the corporation and those who were then stockholders must not suffer by reason of the wrongful act of the defendants.

The plaintiff contends that the counsel who successfully prosecuted these cases should be reasonably paid out of the fund recovered. It is well established that, when a party institutes litigation whereby a fund is raised for distribution among a class of which he is a member, the whole fund so realized ought to bear the expense of the litigation. While they do not controvert this principle, the defendants assert that they, as shareholders, ought not to bear part of the expense of litigation against themselves. On first impression this proposition looks reasonable. But it will not bear analysis. It is founded upon misconception of the posi-

tion of the defendants. As stockholders, they are interested in the recovery of this fund, no matter who the trustees ex maleficio may have been. But they were not sued as stockholders, nor merely as individuals. They were sued as trustees, and the proceedings were based upon their failure to observe their fiduciary obligations. They must answer for their acts as trustees, and it is of no moment that they happen to be stockholders and as such interested in the fund recovered. If some party other than themselves were the declared trustee, would they not be averring their interest? The circumstance, that they are before the court in a dual capacity, makes no difference in equity. As a matter of fact, it has been decreed that they obtained this fund illegally and have no title to it. By the decree, they become entitled to a legal share thereof—what they did not have previously. What their proposition really means is, that it is of no advantage to them to share in this fund, which they themselves must produce. But that does not touch the question of their legal interest in the same, when raised. We are of opinion that reasonable compensation to plaintiff's counsel should be charged against the whole fund.

The defendants produced at the trial releases from various parties, who were stockholders of record on July 26, 1912, of all their interest in this fund—the total being 9,025 shares. These were received in evidence under plaintiff's objection, subject to further consideration. Upon reflection, we think these releases are not proper subjects in this litigation. After the fund has been realized, such stockholders cannot by their action nullify the just results. The defendants must comply with the decree and provide the fund, or so much as is necessary, so that proper expenses may be charged and the lawful stockholders paid. If hereafter any stockholder desires to release the defendants from payment of the share decreed to him, there is no reason why that should not be done. But it cannot be done now.

J. D. Callery presented a claim for distribution to him, or his assignee, of that portion of the fund distributable to 1,770 shares, as set out in Findings of Fact 4. He bases his claim upon the proposition that, when he purchased said stock, all the rights and incidents thereto passed to him. It is true that all dividends upon stock belong to him who is the holder at the time they are declared. They therefore pass by a sale of the stock to a purchaser. The same is true likewise with respect to any mere increase in the value of stock. If the thing with which we are now dealing were a dividend, or an increase in value produced in the ordinary way, the proposition of Mr. Callery would be sound. But this fund is not a dividend at all; none was ever declared. It does not represent an increase in value—something produced by the employment of the corporation capital and assets. On the contrary, this fund consists of moneys, to which the corporation was rightfully entitled, but which were wrongfully diverted from it by the defendants. It represents the advantage which they obtain for themselves and friends, by a misuse of their fiduciary position, and which equity will not permit them to retain from those who were thereby injured. Those parties, it has been determined in these cases, are the stockholders of the Pennsylvania Light & Power Company of record July 26, 1912. The title, by which these stockholders acquire a right to participate in this fund, is a purely equitable one. Whereas, their title to a dividend upon, or a mere increase in value of, stock is a legal one. It follows, therefore, that this right of these stockholders is not a legal incident of their ownership of said stock. In consequence, such right did not pass to Mr. Callery by said sales, and it is of no importance under what contract he purchased the same. There is no pretense that there was any express agreement to transfer such right to Mr. Callery.

The prayer of the bill is that a trustee be appointed to receive and distribute the fund. To this proposition

the defendants object, on account of the expense thereof, which they contend is unnecessary. If a trustee be appointed, it does not seem to us that it would be equitable to charge the expense thereof upon the fund. The plaintiff, however, does not insist upon the above method of framing a decree, accepting the statement that the defendants are responsible parties. Therefore, if the parties agree, we see no difficulty in framing a decree, fixing the amount which the defendants must pay, and calculating the amounts to be distributed to each party respectively in accordance herewith; and then the record can be satisfied by each party as he receives or releases the share, so awarded to him. Otherwise, a trustee will have to be appointed for the purpose of executing the decree. We have stated a conclusion that a trustee should be appointed, in order to finally determine the controversy. But this may be modified hereafter by agreement as above indicated.

The lower court decreed that Charles Geyer, Joseph Stybr and Morris Einstein be held and declared to be trustees for the profits of $14 per share arising from the sale of 1,921 shares of the capital stock of the Pennsylvania Light & Power Company, for the use and benefit of the stockholders of record in said company on January 26, 1912, and interest thereon, aggregating $31,-636.54; that from such fund $5,000 as attorney's fees be allowed plaintiffs' attorneys; that J. D. Callery was not entitled to participate in said fund for distribution; that defendants pay the costs of the proceeding, including the costs in the suit of the Provident Trust Company, et al., against the defendants, 248 Pa. 423, together with the costs of the appeal to the Supreme Court in both cases. J. D. Callery and defendants appealed.

*Error assigned,* among others, was the decree of the court.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* for James D. Callery, appellant.

*J. Rodgers McCreary,* with him *McKee, Mitchell & Alter,* for Charles Geyer, Joseph Stybr and Morris Einstein, appellees.

PER CURIAM, January 3, 1916:

These two appeals were heard together and both are dismissed with costs to the appellees on the opinions of the court below filed May 18, 1915, and June 18, 1915.

Appeals dismissed.