# Land Title Bank & Trust Co., Trustee, v. Lemle et al.

*Richard H. Ledwith* and *Anthony A. Whitaker of Morgan, Lewis & Bockius*, for applicants.

*C. Russell Phillips*, contra.

FINLETTER, P. J., August 9, 1938.—The subject before us is the allowance, out of the fund realized by the foreclosure sale of the mortgaged property, of fees and expenses, incurred, in connection with the administration of the trust and the foreclosure, by the committee representing some of the bondholders of the issue hereinafter referred to.

The facts are that on March 1, 1923, the Philadelphia Company for Guaranteeing Mortgages executed, as trustee, its corporate mortgage securing an issue of $200,000 of its first mortgage bonds.

The trustee passed into the hands of receivers. A committee was formed to represent the holders of bonds, and a large part of the issue was deposited with the committee, under a deposit agreement to which the committee and

the depositing bondholders were parties. Some bondholders have not deposited, and some of the latter actively objected to the allowance prayed for.

On November 11, 1935, the committee petitioned the court for the appointment of a successor trustee to the Philadelphia Company, which as we have said had passed into the hands of receivers. On the committee's petition, the original trustee, assenting thereto, was discharged and the Land Title Bank & Trust Company was appointed successor trustee, and entered into the administration of its trust. This consisted at first mainly in the operation of the apartment house upon which the corporate mortgage was a lien. For some months the proper handling of the business was discussed by the parties interested, the trustee, the committee, and the mortgagor. There was in our opinion justification for not acting precipitately. A reorganization was first proposed, but was found impracticable. Continued operation by the trustee was considered, but finally, on March 12, 1937, the trustee filed a foreclosure bill. On May 10, 1937, on the trustee's motion, judgment pro confesso was taken, and on May 18, 1937, on the trustee's motion, a final decree in foreclosure was entered and the trustee was authorized to sell. A sale, subject to the approval of the court, was made to Maurice A. Granatoor, for $112,900. The property sold included $5,000 cash, which was in the trustee's hands.

On June 22, 1937, the trustee reported the sale to the court who, after hearing and consideration, declined, on September 3, 1937, to confirm it, and ordered a resale.

On October 21, 1937, the trustee reported the resale. This was confirmed by the court. The price realized at the resale was $118,500. This amount was for the property other than the cash in the trustee's hands.

The committee asks an allowance of $3,000, payable out of the proceeds of the sale, for the services of itself and counsel. It bases its right to compensation upon its activity from the time it secured the appointment of a

successor trustee until the final sale was made. It is not denied by exceptants that the committee's counsel took an active part in considering plans for the reorganization of the corporation, and in trying to find a market and secure bidders for the property. They consulted 36 real estate agents, without, however, securing a buyer, or a bidder. However meritorious and industrious they were, it must be stated that their efforts were fruitless, and the fund before us was not created or increased by the committee's efforts.

On the other hand it is not denied that from the time of its appointment until it finally brought about a sale of the property, the trustee administered the property to the satisfaction of all concerned. All of the court proceedings were conducted by it. There is no allegation that the trustee failed in its duty in any way, or that the committee had any fear that it would do so. It was the duty of the trustee to administer the property and at the proper time to foreclose and sell. It did this, and there was no need of any activity on the part of the committee.

Coming to the legal side of the matter, such applications are governed by the usual rules which regulate compensation of committees representing security holders. That is by the contract between the committee and the security holders. The subject (except in proceedings under the bankruptcy amendment acts) is not within the purview of the court: Gerdes on Corporate Reorganizations, 60, §18; Finletter on Principles of Corporate Reorganization 285; In re Paramount Publix Corp., 85 F.(2d) 588 (Augustus N. Hand, J.).

An effort has been made in support of the instant application to bring the case within the principles governing the fees of an attorney whose efforts have created a fund, such as United States v. Equitable Trust Co. of N. Y. et al., 283 U. S. 738, and In re Gillaspie, 190 Fed. 88, 91, for example, and see also Hempstead et al. v. Meadville Theological School, 286 Pa. 493; and those in which one of a class has been at expense for the service of all.

The first-mentioned subject (attorney's fee) is not pertinent because claimant is the committee and not the attorney. The committee cannot claim the status of an attorney, and the latter's services were to the committee, not to all the bondholders. In other words the attorney did not raise or benefit a fund. He served the committee and must look to his client for his fees. The present application recognizes this for the committee claims for itself its expenditures for fees.

On the second heading (above) we recognize the principle that where property has more than one owner, and one co-owner makes necessary expenditures for the benefit of the common property which no one in particular has the duty to make, or where the person charged with the duty negligently or fraudulently failed to act, the right to contribution should be upheld. But where the property is in the hands of a trustee, or indeed anyone charged with the duty of administration for the benefit of several persons, no one of the latter may take personal action to enforce the rights of all, if the administrator is willing and capable of doing so, for, if one co-owner could do so, any other could, and the fund would be wasted by the expense of unnecessarily duplicated efforts.

In Weed et al. v. Central of Georgia Ry. Co. et al., 100 Fed. 162, it was said:

"There is no authority for making such an allowance where the only questions raised by the intervener were such as must inevitably have arisen between the other parties, and in which the interests of the receiver, previously appointed and provided with counsel by the court, were identical with those of the intervener, and there is no evidence that either the receiver or his counsel were negligent in protecting his trust."

In Davis v. Seneca Falls Mfg. Co. et al., 17 F. (2d) 546, payment was refused to a majority creditor for his efforts when it appeared that the receiver was represented by his counsel, and claimant's efforts were unnecessary.

See also In re New York Investors, Inc., 79 F. (2d) 182, and Lane et al. v. Hale, 78 Minn. 421, 81 N. W. 218.

It follows as a corollary that if the person in charge of the fund, call him for convenience a trustee, fails on demand to protect it, or a fortiori, wastes or fraudulently depletes the fund, any co-owner would have the right to protect it, and, protecting, increasing or saving it from depletion, would in equity be entitled to a charge against the whole fund. Examples of this class of cases are: Trustees v. Greenough, 105 U. S. 527; Weed's Estate, 163 Pa. 595; Miller v. Myers et al., 300 Pa. 192; Wegner v. Sheboygan-Elkhart Lake Ry. & Elec. Co. et al., 171 Wis. 325, 176 N. W. 865; Hechelman v. Geyer, 252 Pa. 123; Evans et al. v. Diamond Alkali Co. et al., 315 Pa. 335; Nolte et al. v. Hudson Navigation Co. et al., 47 F. (2d) 166; In re Paramount Publix Corp., supra; Schwartz v. Keystone Oil Co., 164 Pa. 415.

A committee representing less than all the holders of an issue of bonds acts under its agreement with its depositors. It does not represent nondepositors, and can charge the latter only with expenditures that were necessary to protect the fund. If the fund is in the hands of a capable and honest trustee, no activity is needed on the part of any co-owner, depositing or nondepositing bondholders, and if the committee interested as the owner of deposited bonds voluntarily but unnecessarily aids the trustee to find a market it cannot charge its co-owner with unnecessary activity.

What we have said about the committee, i. e., about the bondholders it represents, applies to all bondholders claiming attorney's fees, and therefore to Mr. Gundaker's client. The allowance asked by the committee and Mr. Gundaker must be denied.

It is pointed out that Mr. Granatoor, whose connection with the case was as highest bidder at the first sale, made no objection at the hearing of the petition to confirm that sale. He had, as bidder, no interest in the distribution of the fund. He later appeared representing bondholders

when confirmation of the second sale and allowance of the committee's fees were sought, and then, representing bondholders, objected. Mr. Gundaker objected on both occasions. The interests of these parties are small but must be recognized.