**Eleanor M. WILDERMAN, as a stockholder of Marble Craft Company, Inc., in her own right and on behalf of Marble Craft Company, Inc., Plaintiff,**

v.

**Joseph WILDERMAN and Marble Craft Company, Inc., a Delaware corporation, Defendants.**

Court of Chancery of Delaware, New Castle.

Oct. 29, 1974.

See also Del.Ch., 315 A.2d 610.

Walter L. Pepperman, II, Robert F. Stewart and Thomas Reed Hunt, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

H. Alfred Tarrant, Jr., of Cooch & Taylor, Wilmington, for the individual defendant.

MARVEL, Vice Chancellor:

Plaintiff has moved for the entry of an order awarding her reasonable attorneys' fees and expenses incurred in this litigation on the basis of her successful prosecution of the derivative aspects of this case, which was brought, in part, for the benefit of the defendant corporation, Marble Craft Company, Inc. Thus, in prosecuting such action, plaintiff, in her individual capacity, sought the entry of an order compelling payment of what she claimed to be improperly withheld corporate dividends, but she also sued derivatively to recover from the defendant Joseph Wilderman corporate profits which he had allegedly improperly caused to be paid to himself in the form of excessive and unauthorized compensation by means of the exercise of his control over the affairs of the corporation.

Eleanor and Joseph Wilderman are the corporation's sole shareholders, jointly owning all of the issued and outstanding stock of the corporate defendant, however, until this Court directed otherwise the individual defendant controlled the management of the corporation.

In other words, this Court has ruled in this case (Del.Ch., 315 A.2d 610) that the defendant Joseph Wilderman, in his capacity as chief executive officer of the defendant corporation, improperly caused to be paid to himself excessive and unauthorized compensation and has ordered repayment to the corporation of such unauthorized amounts, the Court concluding that distribution of such recovered funds in the form of dividends [1] or otherwise being a matter of business judgment, which, at least, in the first instance, should be determined by the board of directors, and, in the event of deadlock, by the Court-appointed custodian.

First of all, there is no doubt but that the successful prosecution of this derivative action, which resulted in an order directing the individual defendant to return to the corporate treasury excessive compensation and pension fund contributions in the total amount of $103,810.24, con-

---

1. Although in the course of these proceedings a distribution of $20,000 in dividends was ordered, the fund there dealt with was not part of the amount ordered recovered from Joseph Wilderman as a result of the derivative action, but was rather simply derived from the corporation's net after-tax income for the fiscal year ending in March, 1973.

ferred an "immediately discernible" and therefore "substantial" benefit to the defendant corporation, Richman v. DeVal Aerodynamics, Inc., 40 Del.Ch. 548, 185 A.2d 884, thus establishing a basis for the allowance of a fee for plaintiff's attorneys. Compare Aaron v. Parsons, 37 Del.Ch. 407, 144 A.2d 155, and Chrysler Corporation v. Dann, 43 Del.Ch. 252, 223 A.2d 384. And while, pending appeal of the order of this Court, the individual parties arrived at a settlement agreement concerning the basic matters in issue, such agreement specifically provided that it was without prejudice to plaintiff's present application.

■ The defendant Joseph Wilderman contends, however, that because the repayment of the funds here in issue will expose the corporation to the threat of an accumulated earnings tax, the corporation must necessarily distribute such funds in the form of a dividend, and that as a result the corporation will derive no real benefit from plaintiff's successful prosecution of this action, such a distribution allegedly serving as a mere conduit for the ultimate transfer of the funds in question to the plaintiff and the defendant as shareholders in a transaction which will allegedly result in an economic gain for plaintiff alone. Accordingly, it is argued that plaintiff should personally bear the legal fees and expenses here involved.

However, it must be noted preliminarily that the corporation is apparently not committed to applying such recovered funds to the payment of dividends. In other words, the directors or custodian may possibly elect to invest such funds in plant and equipment, thereby avoiding the threatened tax consequences of the recovery here in issue, or, on the other hand, a decision may be reached to pay the required tax and retain the balance of such funds. See 2 Hornstein, Corporation Law and Practice, § 904 (1959). Such speculation, however, is, in my opinion, irrelevant inasmuch as the recovery by plaintiff of his attorneys' fees and expenses in a successful derivative action is obviously in no way connected with the ultimate use to which a corpo-

ration so benefited may put the net balance of funds recovered as a result of the efforts of plaintiff's counsel.

■ Thus, the basic thrust of the resistance of the individual defendant to plaintiff's motion must necessarily be found in the contention that the individual parties to this litigation have dealt with each other essentially as de facto partners and that the corporate entity through which the moneys in issue were earned may be ignored, thereby disregarding the fact that the recovery here achieved was a result of the successful prosecution of a stockholder's claim that a corporate wrong had been committed against a corporate entity. Such a disregard of the corporate entity, at this late stage of the proceedings, would be, in my opinion, clearly inapposite. See Sarner v. Sarner, 38 N.J. 463, 185 A.2d 851, Lash v. Lash Furniture Co. of Barre, Inc., 130 Vt. 517, 296 A.2d 207, and Hornstein, The Counsel Fee in Stockholder's Derivative Suits, 39 Col.Law Review, 785.

Furthermore, the holding in the leading case of Keenan v. Eshleman, 23 Del.Ch. 234, 2 A.2d 904, is to the effect that the corporate form should not be disregarded in a derivative action. In the cited case, the plaintiff shareholders, in a successful derivative action, contended that because other stockholders had ratified the individual defendants' actions which precipitated the filing of the complaint, that the recovery for the benefit of the defendant corporation should be limited to an amount sufficient to indemnify those stockholders who had declined to ratify the actions complained of. The Court rejected such contention and ordered that the recovery should inure to the benefit of all stockholders of the defendant corporation, stating:

> " . . . . generally, where the action is a derivative one, brought for the benefit of a going corporation, equitable principles demand that the theory of the action be recognized and that the whole recoverable amount be decreed to be paid to the corporation notwithstanding releases, ratifications or waivers after the event."

And while the voting stock of the corporation involved in the cited case was owned by substantially more than two stockholders and the recovery of attorneys' fees was not in issue, the principle there expressed, namely that the corporate entity should not be disregarded in a derivative action applies here. See McCourt v. Singers-Bigger (C.A.8) 145 F. 103. In other words, plaintiff was compelled to sue derivatively only because the individual defendant effectively blocked any possibility of the taking of corporate action to correct the corporate wrongs alleged to have been committed by him. Accordingly, it would be clearly inequitable to deny plaintiff her right to apply for attorneys' fees and expenses here in light of the fact that the corporation clearly would have been obliged to bear its own expenses of litigation had it been free to sue directly for its own benefit. See Sarner v. Sarner, supra. Furthermore, a plaintiff equitably should not be required to pay the litigation expenses attributable to an action such as this when the defendant in fact does benefit from the suit, inasmuch, as noted in Keenan v. Eshleman, supra.

> "It is true that the benefit of an action brought by a corporation, or a derivative action on its behalf, necessarily results to all of the shareholders equally, even when some of them have been wrongdoers or have by acquiescence, or ratification, forfeited their equitable claims to redress; but the best method to work out the rights of the parties in a case of this kind is to preserve the fiction of corporate entity."

Thus, notwithstanding the fact that the individual defendant may in fact suffer a net economic loss as a result of the success of this derivative action, he has nonetheless benefited as a shareholder by achieving a lawful basis for his interest in part of the moneys which he had purportedly acquired improperly. See Hechelman v. Geyner, 252 Pa. 123, 97 A. 193.

The individual defendant cites Leppaluoto v. Eggleston, 57 Wash.2d 393, 357 P.2d 725, in support of his argument that the corporate entity should here be disregarded. In such case, one 50% shareholder sued the other 50% shareholder in a successfully prosecuted derivative action. The Court denied attorneys' fees despite a recovery for the corporation, citing Boothe v. Summit Coal Mining Co., 72 Wash. 679, 131 P. 252, a case in which the court had denied a plaintiff-shareholder an allowance of attorneys' fees and expenses on the ground that his application for the appointment of a receiver had been granted only because the court had accepted his contention that the closely-held corporation was in effect a partnership. Accordingly, in light of the plaintiff's prior position, the Court declined to recognize belatedly the existence of the corporate form after plaintiff had in effect changed his position after being granted the basic relief which he had sought. On the other hand, in the case at bar, this Court specifically granted judgment to plaintiff on a derivative basis, a result which presupposes the existence of a corporate entity.

Furthermore, this case is distinguishable from that of Aiple v. Twin City Barge & Towing Co., 279 Minn. 22, 154 N.W.2d 898, in which the court held that attorneys' fees should be denied where the plaintiff shareholder had sued primarily as a means of preventing the refinancing of his corporation, which, had it been accomplished, would have threatened to injure plaintiff's interest in a competing business. Here, there is no showing of an improper motive on plaintiff's part, she having simply sued to correct a corporate wrong, namely alleged wrongful corporate payments by the individual defendant to himself.

I conclude that plaintiff has standing to seek an award of counsel fees and expenses as a result of her successful prosecution of this derivative action which has resulted in a substantial benefit to her corporation. Such application will be set down for hearing on application of counsel.

Order on notice.