## Smith v. Brown-Borhek Co.

*Dower, Kanehann, Huston & McDonald,* for plaintiff.
*McFadden, Riskin & Williams,* for defendants.

HENNINGER, P. J., February 13, 1963.—Plaintiff, owner of 516 shares of stock in defendant corporation, filed this complaint in equity averring that individual defendants, who are the directors of defendant corporation, failed to discharge their duties with due diligence, care and skill, that they were guilty of gross neglect and inattention, palpable breach of trust, mismanagement, malfeasance and nonfeasance in lending credit to Raydel Homes Corporation, when such sales amounted in 1960 to 37 percent and in 1961 to 52 percent of defendant corporation's gross sales and when they knew or should have known that Raydel was insolvent, in allowing Raydel excessive periods for repayment, that the directors permitted extension of credit to Raydel beyond limits set by themselves and permitted acceptance of five percent noncumulative preferred capital stock in Raydel for $363,300 and a promissory note for $242,207 payable nine months thereafter, in payment of Raydel's indebtedness and that both stock and note were worthless, that plaintiff complained in writing on June 6, 1962, but that no action was taken, that no effort was made by plaintiff as a stockholder because defendants constitute the entire

board of directors and either in their own names or with their spouses, or as trustees or co-trustees, or as beneficiaries of one or more trusts own substantially more than 51 percent of the outstanding stock of defendant corporation.

The corporation and the individual defendants each filed a preliminary objection in the form of a demurrer because, they contend, a good cause of action is not stated in that plaintiff fails to aver that he exhausted his remedies within the corporation before bringing this action, especially since there is no charge of fraud, personal profit, conspiracy or illicit purpose. The leading cases of Wolf v. The Pennsylvania Railroad Company, 195 Pa. 91, and Law v. Fuller, 217 Pa. 439, were cited, inter alia.

The applicable law is clearly set forth in Pa. R. C. P. 1506, as follows:

"In an action to enforce a secondary right brought by one or more stockholders or members of a corporation or similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth

"(1) that each plaintiff was a stockholder or owner of an interest in the corporation or other entity at the time of the transaction of which he complains or that his stock or interest devolved upon him by operation of law from a person who was a stockholder or owner at that time, and

"(2) the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts."

Plaintiff has stated reasons for not pursuing his remedy further within the corporation, but surely it is implicit in the rule not only that he state reasons but also that the reasons stated must be valid.

The question then is whether plaintiff has sufficiently set forth the reason for not making any effort to secure

enforcement by the corporation. It will be noted that plaintiff pleads that he had complained in writing to each of the directors and this writing indicates that an earlier communication had gone to the officers of the corporation. The suit was not begun until four and one-half months after the sending of the letters to the directors.

Plaintiff seeks to excuse his carrying the matter to the stockholders for the reasons given in the first paragraph of this opinion.

Defendants attack these reasons on two grounds: (1) no allegation of fraud and (2) plaintiff does not plead that defendants control a majority of the stock because some of it is held in trust by outside trustees who must act independently of the beneficiaries.

The latter argument is rather thin. Plaintiff pleads that a substantial majority of the stock is held by defendants and their spouses outright or as cestuis que trustent. It is an easy inference that the trustees for people who have been deemed capable of acting as directors of this million dollar corporation would hesitate to act contrary to the interests of their own beneficiaries, whether or not such action might possibly hazard the trust res.

As to the lack of allegation of fraud, in Wilson v. Brown, 269 Pa. 225, it is stated (p. 227):

"We have said in a number of cases that the right of an individual stockholder to act for the corporation is exceptional and arises only on a clear showing of special circumstances, among which inability or unwillingness of the corporation to proceed, demand upon the regular corporate management and a refusal to act, are imperative requisites, and the refusal of the corporate management must appear affirmatively to be a disregard of duty and not an error of judgment—a nonperformance of a manifest official obligation amounting to a breach of trust: Beech on Corporations,

section 878. Where it appears that fraudulent acts, prejudicial to the interests of the corporation, have been committed, so interwoven with the conduct of the corporate managers and of such nature that it might be presumed the officers would commit a breach of trust in refusing to proceed, a demand is not necessary, as it would be 'vain and useless.' . . ."

Plaintiff has been guarded in his language and does not use the word "fraud" in describing the conduct of the directors. He does openly plead a breach of trust and cites two or three instances in which he believes that the action of the directors amounted to a breach of trust. These are the extension of credit beyond the duly constituted policy of the corporation, the extension of credit when they should have known of the insolvency of Raydel, the extension of credit to this one customer to such extent as to endanger the solvency of defendant corporation and the subordination to other creditors and the freezing of over one-half of Raydel's indebtedness by the acceptance of noncumulative preferred stock in Raydel.

It ill behooves us to pit our own judgment against that of the eminent businessmen, who are the individual defendants, but if the last cited transaction took place, and for the purposes of acting upon the demurrers it did take place, we fail to find any valid reason why defendant corporation should have placed over 25 percent of its assets at the mercy of Raydel, its debtor, becoming a helpless preferred stockholder rather than remaining a creditor, with an overdue account.

In our opinion, this transaction alone in dealing with an insolvent debtor would call for explanations. We also believe that plaintiff has sufficiently explained his failure to carry his complaint from the directors to the stockholders. Under such circumstances, the exceptional remedy of a stockholder's suit lies.

Now, February 13, 1963, defendants' demurrers are overruled and it is ordered that they answer over on the merits within 20 days after service of this order upon respective counsel.