# Law, Appellant, *v.* Fuller.

*Corporations—Officers and directors—Trust relation—Loan of money to company—Purchase of corporate property.*

The president of a corporation may, in good faith, loan to the company moneys necessary for its use, may take and enforce a note given as security for the loan, and at a judicial sale of the company's property, purchase it for his own benefit.

A stockholder cannot maintain a suit in his own name to assert the rights of a corporation of which he is a member unless he shows a demand upon the corporation to bring suit, and a refusal to do so, or such circumstances as would render a demand useless. The court will not assume that such demand would be·useless, simply because the defendant owned a large majority of the stock of the corporation.

Argued Feb. 26, 1907. Appeal, No. 18, Jan. T., 1907, by plaintiff, from decree of C. P. Lackawanna Co., May T., 1902, No. 1, dismissing bill in equity in case of John B. Law, for himself and such of the stockholders of the Girard Coal Company as care to join as plaintiffs herein, and Alexander B. Law v. E. L. Fuller. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Bill in equity for an account.

KELLY, J., filed an opinion, which was in part as follows:

The plaintiffs, claiming to be stockholders of the Girard Coal Company, seek to have the defendant declared a trustee for them for their proportionate share of the value of the property of the company, which was sold at sheriff's sale to the Seneca Coal Company, a corporation, the capital stock of which was, at the time, practically all owned by the defendant, upon judgments obtained by E. L. Fuller & Company, a copartnership, of which the defendant was a member, and E. L. Fuller, while he was the owner of a majority of the stock of the Girard company, and was its president; which property, with other properties, were subsequently sold to the Lehigh Valley Railroad Company for $1,000,000.

The plaintiffs base their claim for an account upon the general principle of law that officers and directors of a corporation

are trustees for its stockholders, and are forbidden in equity to acquire any interest hostile to the interest of the stockholders, and that whenever any such officer or director purchases the property of the corporation, he takes it as a trustee for the stockholders; while on the part of the defendant, it is contended that under the facts of this case the rule does not apply.

While it is true that, generally speaking, a director of a corporation cannot acquire the property of the company, either at private or public sale, to the prejudice of a stockholder, yet there are exceptions to this general rule. He may loan money to the company and take security for it, and he may enforce such security in the same manner as any other creditor, if he acts in entire good faith. The principle is stated in 10 Cyc. 812, and sustained by many cases cited in the notes, as follows: " The only just and practicable doctrine is that the director of a corporation may advance money to it, may become its creditor, may take from it a mortgage or other security, and may enforce the same like any other creditor, but always subject to severe scrutiny, and under the obligation of acting in the utmost good faith." In Oil Co. v. Marbury, 91 U. S. 587, the principle is laid down that while a director of a joint-stock company occupies a fiduciary relation, where his dealings with the subject-matter of his trust and with the company are viewed with jealousy by the courts, and may be set aside on slight grounds, yet one director, among several, might loan money to the corporation when the money is needed, and the transaction is open and otherwise free from blame, and might buy at a sale under a mortgage given to him by the company to secure the money loaned, if the sale was a fair one. This principle is recognized as the law in Pennsylvania, as will be seen by reference to the opinion of Mr. Justice Dean in Mueller v. Fire Clay Co., 183 Pa. 450, in which he quotes from the opinion of Mr. Justice Miller, the principle just stated as a proper statement of the law, and who thus states the rule: " The true interpretation of the rule, as shown by our own cases and the weight of authority in the United States is, that the burden is on the officer having both the power and preference to show that the contract was fair under all the circumstances." We find no cases in con-

flict with these principles of law, nor are there any referred to in the brief furnished us by the plaintiffs' counsel. The principal case upon which they rely is Aultman's Appeal, 98 Pa. 505. There is nothing in that case which is in conflict with the principles stated. It is authority for the general principle that a stockholder of a corporation cannot buy the corporate property without being held to account as a trustee for the other stockholders, but does not touch upon the question of the right of directors to advance moneys to a corporation and take and enforce security for it.

The question, therefore, is, as far as the merits are concerned, does the defendant, under the facts of the case, come within the general rule which would constitute him a trustee for the other stockholders, or does he come within the exception to it, which allows a director to advance moneys to a corporation, take and enforce security for it, and at a judicial sale of the company's property purchase it for his own benefit?

The Girard Coal Company, the sale of whose property constitutes the subject-matter of the controversy, was operated at a loss from the time it first began business, up to the time of the sale of its property to the Seneca Coal Company, which, as by reference to our findings will appear, we treat as a sale to the defendant. John B. Law was its manager and superintendent up to November 1, 1899, when he was removed, and under his management it lost money; and from that time until its property was sold at sheriff's sale in April, 1901, under the management of his successor, it continued to lose money, so that from the time it began to operate until it ceased, it had lost, exclusive of all expenditures for equipment and betterments, upwards of $21,000. On March 1, 1899, it owed the Old Forge Coal Company $16,000, which was paid on that date by the firm of E. L. Fuller & Company, and the debt transferred to them. This was while Mr. Law was the manager and had access to the books of the company, and who was a member of the firm of E. L. Fuller & Company at that time. This firm advanced moneys to it from time to time, until on October 1, 1900, it owed them $38,000. While it does not appear that Mr. Law knew of these advances, yet, as a member of the firm of E. L. Fuller & Company, up to

June 25, 1900, when he assigned his interest, he was in a position to know of them if he saw fit to inform himself, and as a stockholder and director of the Girard company he was in a position to keep himself informed with reference to its affairs. There is no evidence that he was misled in any way or deceived as to the transactions between E. L. Fuller & Company and the Girard company, or that he ever was denied any information. The meeting of the directors of the Girard company was called by E. L. Fuller, as the president, " for the purpose of authorizing the treasurer to give the company's note to E. L. Fuller & Company for money borrowed from them during the last two years, viz.: $38,000 and interest." A notice of this meeting was prepared in the office of the company to be sent to Mr. Law, but whether mailed or not it did not reach him, and he had no notice of the meeting. If this notice was served upon him, or if it had reached him through the mail, he could certainly not deny the fairness of the transaction by which the property was sold. The validity of the debt is not questioned, nor is there any suggestion that the loans were not made in good faith to supply the needs of the company. We cannot see how the fact of the notice not reaching Mr. Law can affect Mr. Fuller. It was not his duty, as president, to personally send out the notice, and there is no evidence or intimation that he was concerned in any way in the failure of the notice to reach Mr. Law, or that he knew that Mr. Law had not had notice. In addition to the indebtedness of the company to E. L. Fuller & Company of $38,000, which, with interest at the time of the sale, amounted to upwards of $41,322.99, which was the amount of the judgment entered against it on March 16, 1901, it owed the defendant personally the sum of $13,090.33, which he had advanced to it from time to time, and for which a judgment note had been given him. The validity of this indebtedness is not questioned, nor is there any evidence to call in question the good faith of the defendant in making the loans. In both it owed, at the time its property was sold, upwards of $54,000, practically all its property was worth. It is true its value became much higher shortly after the sale to the Lehigh Valley Company, but that was due to the general advance in the price of all coal properties in the anthracite regions at about that

time, and we must view the conditions as they existed at the time of the transaction, by which the defendant became the owner of the property. It cannot be fairly found as a fact, in view of the uncontradicted evidence, that the property of the Girard company formed any part of the $1,000,000 consideration for the sale of the Old Forge, Newton and Girard properties, in excess of $40,000, which was the estimate placed upon it by the representative of the purchaser, after an examination by experts, which sum was much less than the amount of its indebtedness.

Under these circumstances and all of the facts of the case, we cannot see that the defendant was guilty of any dishonest conduct, or that he acted in bad faith. It is true that there was a rather abrupt change of conduct on the part of the defendant when he ceased advancing moneys to the company and began to enforce collection of his claims, for which he and the firm, of which he was a member, had already loaned, apparently with a view of combining the three properties, but, as we understand the law, that fact would not render the transaction a dishonest one. He had the undoubted right to cease advancing moneys at any time, and at any time to take legitimate legal action to collect what was already due him, either individually or as a member of a firm, and in the absence of any perfidious conduct on his part in doing so, he had the right, under the law, to become the purchaser of the company's property.

Having found that on the merits the plaintiffs have failed to make out a case, it is, perhaps, not necessary to discuss the technical objections that are interposed against them. We will refer to one of them, however. It is, that the plaintiffs as stockholders, cannot maintain their suit in the absence of an averment in the bill and proof of the fact that they made every reasonable effort to have the action brought by the Girard Coal Company itself. There is neither averment nor proof that there was any effort whatever made to induce the directors to institute any proceedings against the defendant. The law upon this question appears to be clear. In Hawes v. Oakland, 104 U. S. 450, it is stated by the supreme court of the United States as follows: " Before a shareholder is permitted, in his own name, to institute and conduct a litigation,

which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances." Our own Supreme Court, in a per curiam opinion, in Holton v. Ry. Co., 138 Pa. 111, makes use of this language : " The bill was filed by Noble Holton, as a stockholder, to enforce the rights of the railway company. It is settled law that such suit must be brought by and in the name of the corporation ; or, if brought by a shareholder, the bill must contain an averment of a demand by the shareholder upon the corporation to bring suit, and a refusal to do so. This is familiar law, and does not need the citation of authority." And again, by Mr. Justice MITCHELL, in Wolf v. R. R. Co., 195 Pa. 91, is the rule stated fully and to the same effect. He said : " The first matter for consideration is the status of the plaintiff to maintain such a bill. It is a bill to assert rights of the corporation, and, therefore, must ordinarily be brought by the corporation itself. The right of an individual stockholder to act for the corporation is exceptional, and only arises on clear showing of special circumstances, among which inability or unwillingness of the corporation itself, demand upon the regular corporate management, and refusal to act are imperative requisites. And the refusal by the corporate management must appear affirmatively to be a disregard of duty, and not an error of judgment, a nonperformance of a manifest official obligation, amounting to a breach of trust : Beach on Private Corporations, sec. 878. There must be averred and proved an actual application to the directors, and a refusal by them to bring suit, or to allow plaintiff to do so in the corporate name, and where misconduct of the directors themselves is alleged, the bill must show an effort to secure plaintiff's rights through meetings of the corporation : Beach, secs. 882, 885. ' The shareholder should set forth in his bill the efforts that he had made to induce the corporation to act in the matter, should allege its refusal or failure to sue,' and ' facts showing that he has left undone nothing which in reason he might have done to prevail on the corporate management to bring the action :' Taylor on Corporations, secs. 138, 140. See Morawetz on Corporations, secs. 241, 244."

The plaintiffs say, in defense of their right to sue as stockholders, that inasmuch as the defendant was the president and the owner of a large majority of the stock of the company, a demand upon the company would have been useless. We cannot assume that such demand would be useless simply because the defendant owned a large majority of the stock. The charter of the company fixed the number of directors at four. Who they were at the time this bill was filed does not appear. On January 23, 1901, according to the minutes of the meeting held on that day, the directors present were E. L. Fuller, Frank T. Patterson and Percy C. Maderia. Whether Mr. Patterson and Mr. Maderia were still directors at the time the bill was filed, or who the other two were, has not been shown. Proceedings of ouster were begun against the company by the attorney general in the Dauphin county court on March 14, 1902, but there was no decree of ouster until November 13, following, so we cannot see how that fact affects the question. In the absence of any proof of who the directors were about the time the bill was filed, and that they were mere representatives of the defendant, we do not think, in view of the authorities upon the subject, that the plaintiffs, as stockholders, can maintain the bill.

*Error assigned* was decree dismissing the bill.

*J. B. Woodward,* of *Woodward, Darling & Morris,* with him *Joseph O'Brien,* for appellants.

*Everett Warren,* of *Willard, Warren & Knapp,* for appellee.

PER CURIAM, April 1, 1907:

This bill was by stockholders of a corporation against its president for an account, on the ground that he had procured a sale of the property of the company and had acquired possession thereof under circumstances that made him a trustee of the stockholders. There is no dispute as to the findings of fact. The law applicable to them is clearly stated by the learned judge of the common pleas, and on his opinion we affirm the decree at the cost of the appellant.