## Evans et al. *v.* Diamond Alkali Company et al. (Freeman et al., Appellants).

Argued March 23, 1934. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*William S. Dalzell,* with him *H. F. Stambaugh,* for appellants.

*Edwin W. Smith,* of *Reed, Smith, Shaw & McClay,* with him *Maynard Teall,* for appellee.

OPINION BY MR. JUSTICE LINN, May 21, 1934:

This appeal is from the refusal to order the Diamond Alkali Company to pay counsel fees to appellants.

Appellants were retained by Howard S. Evans in April, 1931. In his name, as plaintiff, on September 30, 1932, they issued a summons in equity against that corporation and certain directors to redress frauds alleged to have been perpetrated by the directors. Plaintiff was then a stockholder and had been a director. They contend that, as a result of their efforts, though without trial of the suit, the alleged grievances were settled by the corporation by the restoration to the corporation of valuable property; that, on familiar equitable principles, the property so restored is liable to a charge for their services as the attorneys of Howard S. Evans. The Diamond Alkali Company denied liability on the ground that appellants were never authorized to do anything on behalf of the corporation; that they have not brought themselves within the rules governing the allowance of counsel fees to a stockholder redressing a wrong to the corporation. The learned court below adopted that view and dismissed the claim.

These governing rules are well settled and have recently been stated: Pellio v. Bulls Head Coal Co., 231 Pa. 157, 160, 80 A. 71; Passmore v. Allentown & Reading Traction Co., 267 Pa. 356, 359, 110 A. 240. In Wilson v. Brown, 269 Pa. 225, 227, 112 A. 1, we said: "We have said in a number of cases that the right of an individual stockholder to act for the corporation is exceptional and arises only on a clear showing of special circumstances, among which inability or unwillingness of the corporation to proceed, demand upon the regular corporate management and a refusal to act, are imperative requisites, and the refusal of the corporate management must appear affirmatively to be a disregard of duty and not an error of judgment—a nonperformance of a manifest official obligation amounting to a breach of trust: Beech on Corporations, section 878. Where it appears that fraudulent acts, prejudicial to the interests of the corporation, have been committed, so interwoven with the conduct of the corporate managers and of such nature that it might be presumed the officers would commit a breach of trust in refusing to proceed, a demand is not necessary, as it would be 'vain and useless.' Ordinarily there is no presumption that officers will commit such breach of trust, and the charge that they will should rest on acts, affirmative or permissive, duly averred, manifestly in violation of duty, and manifestly the result of fraud and not of erroneous judgment. It is not always necessary for the complaining shareholder to appeal to stockholders at a meeting, but he is in duty bound to make every reasonable effort to prevail on the corporate management to bring action: Wolf v. Railroad, 195 Pa. 91; Glenn v. Kittanning Brewing Co., 259 Pa. 510; Passmore v. Allentown & Reading Traction Co., 267 Pa. 356; Kelly v. Thomas, 234 Pa. 419." See, also Equity Rule 37. Where such diversion of property occurs, the parties taking it become constructive trustees for the benefit of the corporation, the owner; equity will order it restored in appropriate proceedings. It is set-

tled that, when equity decrees the return of the property of a corporation at the suit of a stockholder acting for the corporation, it may charge the property with the reasonable expense of the litigation, including compensation to counsel: Hechelman v. Geyer, 252 Pa. 123, 97 A. 193; Hempstead v. Meadville Theological School, 286 Pa. 493, 134 A. 103; see, also, Trustees v. Greenough, 105 U. S. 527.

In the light of these rules, does the record support appellants' claim? Had Howard S. Evans exhausted the means within his reach to obtain action by the Alkali Company, when he brought his suit? Does it appear that he was authorized to sue as the representative of the corporation?

T. R. Evans, who was president of Diamond Alkali Company, a defendant, died March 17, 1931. His brother, the plaintiff, Howard S. Evans, owned 3,501 of the 6% preferred and 5,710 shares of the common stock of the company, and, on April 16th, was elected a director. On his brother's death, he claimed, under some arrangement with decedent, to be entitled to a part of the shares of stock held by decedent in Diamond Investment Company, a subsidiary of the Diamond Alkali Company. Apparently obtaining no satisfaction with regard to his claim from the executrix of T. R. Evans, or from her attorney, Howard S. Evans retained appellants to obtain redress from his brother's estate. Their investigation led them to conclude that certain directors had diverted to their own use certain property of the Alkali Company and had otherwise mismanaged corporate affairs with resulting loss. They advised their client of this conclusion. Although he was a member of the board of directors, he made no formal complaint to the board until April 21, 1932, but, even then, did not demand that the corporation proceed to right the wrong. In consequence of that complaint, however, a committee of two members of the board was at once appointed to "make a thorough investigation of all matters complained of,

with authority to take such advice as they deemed necessary and to report to the board at a later date."

It is clear that so long as the board appeared to be moving in good faith (whether it was or not is now immaterial, because the benefits on which the appellants base their claim to compensation came to the stockholders through this committee), plaintiff had not established the necessary ground to move as a party plaintiff on behalf of the corporation, the real beneficiary of the trust. The committee employed counsel, who, the court found, from that time also acted as counsel for the corporation. The investigation lasted over three months, during which counsel frequently consulted with the appellants as attorneys for Howard S. Evans. The results of the investigation of the committee were embodied in a written report, submitted to the board, advising that, though the parties charged denied the fraud alleged, they were nevertheless willing to redeliver to the corporation certain shares of stock involved, on receiving what they paid for it with 6% interest. A number of other recommendations, which need not be detailed, were also made. It is sufficient for the purposes of this appeal to say that the report was adopted by the board August 12, 1932, approved by a stockholders' meeting October 19, 1932, that the compromise recommended was ultimately carried out, and that all of the stockholders, including Howard S. Evans, participated in the fruits of the settlement. Meanwhile, however, on September 30, 1932, after the approval of the settlement by the board, and while in process of submission to the stockholders, as has been stated, appellants began the suit with Howard S. Evans as plaintiff. The bill was not filed until later, and it is agreed, for the purposes of this proceeding, that it shall be treated as having been filed October 10th. That plaintiff delayed bringing suit, as appellants contend, at the request of the corporation, is immaterial, for the reason that, from the date of Evans's notice to the board in April, it was taking action with the result described.

On November 25, 1932, Howard S. Evans discharged appellants as his attorneys. On the record as presented, we need not consider how that severance of the relation of attorney and client affects their claim, necessarily derived from Evans, who himself presents no claim for reimbursement. On January 9, 1933, with the approval of the court, a stipulation was filed, signed by, or on behalf of, all parties, and by appellants, stating that "all of the matters involved in the bill of complaint" were "compromised and settled, excepting only the ascertainment and determination of the questions of whether or not the defendant Diamond Alkali Company is liable for the fees of" appellants, and if so, how much. Pursuant to that stipulation the court heard evidence to determine whether the corporation was liable to appellants, and, concluding that it was not, dismissed the claim without proceeding further. On exceptions, the matter was heard in banc, and the learned president judge's findings and conclusions were affirmed. This appeal is from the order so made.

It is obvious, from what has been stated, that the plaintiff, Evans, was never in position to enforce the trust on behalf of the corporation. He could not aver that he had made demand for corporate action and that his demand had been refused, or that demand would be useless; he could not comply with such conditions precedent to action, because, as a director and large stockholder, he knew, when the suit was begun, that the corporation had acted and that its action, already approved by the board, was in process of submission to the stockholders. And, as the only benefit to the corporation came through this committee, it is unnecessary to consider appellants' argument that the committee was not disinterested.

Appellants agree that the suit begun by Howard S. Evans had brought no fund into court from which a chancellor could reimburse him, but they contend that their activity, on behalf of Evans, was "the proximate or moving cause of the recovery" and that they are,

therefore, entitled to recover. We all agree that this contention must be rejected for various reasons. It is undisputed that the corporation acted with entire satisfaction to all shareholders. The adoption of appellants' position would result in conflict between litigation conducted in such circumstances by the corporation and rival litigation conducted by a stockholder, and produce intolerable interference with the management of corporate affairs by one having no right to interfere. Such counsel fees as were part of the cost of the recovery,—an expense in the administration of the trust,—must, of course, be borne by the restored property, but, as its restoration came by the settlement by the corporation, and not in the equity proceeding instituted by Evans after the settlement had been approved, such fees were properly payable by the corporation to its counsel and not to Evans. Any gain to the corporation from the activity of the plaintiff and the appellants was the contribution of volunteers: see Jones v. Woods, 76 Pa. 408.

On appellants' theory, the trust res would be charged twice with the services of counsel, although plaintiff never qualified to sue on the corporation's claim. We have examined the reported cases from other jurisdictions relied on by appellants, but find that none of them supports the conclusion urged.

Decree affirmed at appellants' costs.