**Alfred R. RECCHION, an individual, and derivately on Behalf of WESTINGHOUSE ELECTRIC CORPORATION, Plaintiff,**

**v.**

**Robert E. KIRBY, et al., Defendants.**

**Civ. A. No. 85–1324.**

United States District Court,
W.D. Pennsylvania.

March 25, 1986.

As Amended April 18, 1986.

John M. Tighe and John T. Tierney, III, Pittsburgh, Pa., for plaintiff.

Edwin L. Klett and Larry K. Elliot, Pittsburgh, Pa., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

BLOCH, District Judge.

On February 10, 1986, the Court held a hearing on the question of the plaintiff's adequacy as a representative in the above captioned matter. At the conclusion of the hearing, the Court ordered the parties to file proposed findings of fact and conclusions of law on the issues of plaintiff's adequacy as a representative and the adequacy of the demand on the Board of Directors. Having considered the testimony and reviewed the exhibits admitted into evidence, the Court now enters its findings of fact and conclusions of law.

### Findings of Fact

1. This is a shareholder's derivative suit brought on behalf of Westinghouse Electric Corporation (Westinghouse) against past and present officers or directors of Westinghouse or its subsidiaries.

2. Plaintiff Alfred R. Recchion is an individual residing in New Jersey.

3. The complaint, *inter alia*, alleges that from on or about August, 1977 and continuing through May 13, 1980, defendants Kristy, Hurlburt, Hayward, Kirchner, and Facchini, officers of Westinghouse subsidiaries, presented a false financial picture of Westinghouse in order to meet their financial performance goals and thereby realize greater executive compensation. To effectuate their goal, these defendants engaged in the following practices:

 a. Overestimated or underestimated production costs for nuclear and fossil facilities of Westinghouse;

 b. Arbitrarily adjusted a percentage of completion ratio or a ratio of price to costs on various nuclear plants;

 c. Took profits from completed construction accounts and allocated them to secret reserve accounts called "bags";

 d. Used the secret reserve accounts to alter financial results in order to receive bonuses; and

 e. Covered up excessive executive expenses by offsetting them in OMC Reserve Account 21215 instead of reporting them in the proper reserve account.

4. As a result of the aforementioned practices, plaintiff alleges that these defendants engaged in corporate waste and exploitation of corporate information for their personal benefit.

5. The complaint further alleges that the remaining defendants breached

their fiduciary duty by failing to detect and prevent the aforementioned activities.

### A. The Plaintiff

6. Recchion was employed by Westinghouse from June of 1965 until his involuntary resignation in April of 1980.

7. During the relevant time period, plaintiff was employed in the following positions:

a. May, 1975 to September, 1977—Site Financial Manager, Westinghouse International Power Systems Company, Zagreb, Yugoslavia;

b. September, 1977 to December, 1978 —Manager Financial Planning and Analysis, Westinghouse, Pittsburgh, Pennsylvania;

c. February, 1979 to 1980—Manager Project Accounting and Proposal Analysis, Westinghouse, Pittsburgh, Pennsylvania;

d. 1980—Manager Financial Control, Westinghouse International Company, Pittsburgh, Pennsylvania.

8. In April of 1980, Recchion was asked to resign from Westinghouse because he had violated corporate policy by improperly approving excessive expenditure of company funds.

9. Plaintiff testified that he felt that he had tremendous growth potential at Westinghouse, whereby he could realize a salary of $150,000 with attendant benefits. Following his involuntary resignation from Westinghouse, plaintiff was forced to make a career path change. Presently, plaintiff has achieved his maximum possible salary of $62,300.

10. Recchion feels vindictive towards Westinghouse.

### B. Other Litigation

11. Following Recchion's involuntary resignation, other litigation has been initiated by Mr. Recchion against Westinghouse.

12. On May 8, 1980, a hearing was held regarding Recchion's claim for unemployment compensation.

13. On September 1, 1982, Recchion and his wife filed suit against Westinghouse in the Court of Common Pleas of Allegheny County, Pennsylvania, stating several causes of action arising out of his wrongful discharge and seeking substantial compensatory and punitive damages.

14. On April 12, 1983, plaintiff filed suit in the United States District Court for the Western District of Pennsylvania at 606 F.Supp. 889, individually and derivatively on behalf of Westinghouse against the same individual defendants in the instant suit, alleging violations of the federal securities laws, common law fraud and breach of the defendants' fiduciary duty. By memorandum opinion dated January 25, 1985, the Court, inter alia, dismissed plaintiff's derivative claims for failure to comply with the "demand on directors" requirement of Fed.R.Civ.P. 23.1. By order dated February 27, 1985, plaintiff was denied leave to amend the complaint to include a derivative claim. On April 3, 1985, counsel entered into a stipulation whereby the individual defendants named in the derivative claim did not have to file a responsive pleading in view of the Court's dismissal of that claim. Subsequently, Recchion's individual claims were settled for $2,000.

15. On May 6, 1985, the instant suit was filed in the Court of Common Pleas of Allegheny County, Pennsylvania, and subsequently removed to the United States District Court for the Western District of Pennsylvania.

### C. Stock Ownership

16. Recchion sold 252 shares of Westinghouse stock on August 25, 1977.

17. Plaintiff purchased one share of Westinghouse stock on April 14, 1983, for the sole purpose of bringing a derivative action.

18. Between the time of the sale and purchase of Westinghouse stock, plaintiff owned no Westinghouse stock.

### D. Recchion's participation and knowledge of the alleged wrongdoing

19. Recchion was aware of the facts and various accounting practices alleged in

paragraphs 30 to 42, 44 and 46 to 50, which concern the use of completed contracts to adjust the profit and loss statement to meet the financial plan, the arbitrary marking up of percentage costs to completion on various plants, as early as September of 1977.

20. Recchion became aware of the use of Account 21215 to cover up excessive executive expenditures in late 1979 or early 1980.

21. Without making any determination on the merits of plaintiff's allegations, and assuming *arguendo* that the wrongdoings alleged in plaintiff's complaint are true, Recchion participated in the alleged improper accounting practices at the direction of his supervisor, although he knew that they were in violation of generally-accepted accounting principles. Specifically, Recchion was involved in manipulating the profits and losses on the balance sheets and adjusting the ratio of percentage cost completion on nuclear plants to meet financial goals.

22. In 1980, Recchion lied to Westinghouse auditors regarding the complained of accounting practices in Account 21215 at the direction of his superior.

23. Recchion knew about all of the facts alleged in the complaint at the time he purchased one share of stock in April of 1983.

*E. Verification*

24. The amended complaint which was filed on November 15, 1985, was verified only by Recchion's attorney.

25. On December 3, 1985, a second affidavit was filed which Recchion admitted was not signed before a notary, although it purports to have been so signed. Instead, the notary's signature was added after Recchion mailed the affidavit to his attorney in Pennsylvania. Recchion did so at the direction of his attorney, although he knew it was improper.

*F. Demand*

26. On or about March 8, 1985, Recchion sent a letter to 17 individuals stating as follows:

Dear Director:

On behalf of Mr. Recchion I am formerly making a demand upon you to take action, including legal action for the claims made on behalf of Westinghouse Corporation in the above captioned suit as soon as possible.

Very truly yours,

TARASI, TIGHE, TIERNEY & JOHNSON, P.C.

Signed:

John T. Tierney, III

27. Attached to the letter, *inter alia,* was a copy of the complaint and amended complaint filed at 606 F.Supp. 889. Also attached was an order denying Recchion's requests to amend his complaint in 606 F.Supp. 889 to include a derivative count.

28. At the time that the demand letter with accompanying documents was sent to the board of directors, the Court had already dismissed the derivative claim.

29. The demand letter was sent to the following persons:

D.C. Burnham

O. Pendelton Thomas (Director—Deceased February 8, 1985)

Hobart Taylor

Hays F. Wakins (Director)

David T. McLaughlin (Director)

Douglas Danforth (Director)

W.L. Hayward

Donald F. Horning (Director)

Richard R. Pivirotto (Director)

Karl R. Bendetsen

Louis K. Eilers

Robert E. Kirby

John McGillicuddy (Director)

Rodger Milliken (Director)

George L. Wilcox

Marina N. Whitman

R. Burt Gookin (Director)

H.O. Berches

30. Of the above mentioned persons, only those whom the Court have so indicated were members of the board of directors on March 8, 1985.

31. The names of Westinghouse's Board of Directors are readily ascertainable.

## Conclusions of Law and Memorandum Opinion

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### A. Adequacy of Representation

The defendants move for dismissal maintaining that plaintiff "does not fairly and adequately represent the interest of the shareholders" as required by Fed.R.Civ.P. 23.1.

In determining whether plaintiff will be an adequate representative, the Third Circuit has emphasized two factors: (1) the plaintiff's attorney must be qualified; and (2) the plaintiff must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Although *Wetzel* dealt with class representation under Fed.R.Civ.P. 23(a)(4), in *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982), the Third Circuit held that the factors were applicable in analyzing adequacy of representation in a derivative action.

In *Vanderbilt v. Geo-Energy, Ltd.*, 725 F.2d 204 (3d Cir.1983), the Court noted the relevancy of the following factors in determining whether the derivative plaintiff can provide the requisite fair and adequate representation:

[E]conomic antagonisms between representatives and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and the defendants; the relative magnitude of plaintiff's personal interests as compared to his interests in the derivative action itself; plaintiff's vindictiveness towards the defendants; and finally the degree of support plain-

tiff was receiving from the shareholders he purported to represent.

*Id.* at 207 (*quoting Davis v. Comed, Inc.*, 619 F.2d 588, 593–94 (6th Cir.1980)).

No single factor may be dispositive. The Court must examine the combination of the aforementioned factors as they apply to the circumstances and facts of each case. *Rothenberg v. Security Management Co., Inc.*, 667 F.2d 958, 961 (11th Cir.1982); *Davis v. Comed, Inc.*, 619 F.2d at 593. The burden is on the defendant to demonstrate that plaintiff will be an inadequate representative. *Lewis v. Curtis*, 671 F.2d at 788.

In *G.A. Enterprises, Inc. v. Leisure Living Community, Inc.*, 517 F.2d 24 (1st Cir.1975), the First Circuit noted that plaintiff is not disqualified, under Rule 23.1, merely because of the existence of interests beyond those of the class he seeks to represent, so long as he shares a common interest in the subject matter of the suit. In other words, purely hypothetical, potential or remote conflicts of interest do not disable plaintiff from being an adequate representative. Thus, it is sometimes said that the antagonism "must go to the subject matter of the suit"—meaning that antagonism irrelevant to the proceedings may be disregarded. *Id.* at 27. Most frequently, economic antagonism arises in the case of competing business entities. In this situation, courts have recognized that the derivative action is frequently "just one more skirmish in a larger war between [the plaintiff] and some of the defendants,...." *Davis v. Comed*, 619 F.2d at 597; *see duPont v. Wyly*, 61 F.R.D. 615, 622 (D.Del. 1973).

 While a plaintiff is not disqualified from bringing suit merely because some of his interests extend beyond those of the class, the Court may take into account other litigation between the parties, especially where the plaintiff has initiated the suits, that render it likely that the representative plaintiff may disregard the interests of other class members. *Id.*, 667 F.2d at 961; *Blum v. Morgan Guaranty Trust Co.*, 539 F.2d 1388, 1390 (5th Cir.1976), *accord,*

*Vanderbilt v. Geo-Energy, Ltd.*, 725 F.2d at 208. Courts have recognized that the representative plaintiff might use the derivative action as leverage to obtain a favorable settlement in other actions brought against the corporation. *Rothenberg v. Security Management Co., Inc.*, 667 F.2d 958, 961 (11th Cir.1982). A derivative suit can constitute a particularly effective weapon for purposes of obtaining a favorable settlement in other actions. *Id.* at n. 7. This is especially true when the representative's stake "paled" in comparison with his outside interests, and his interests in the derivative claim is "infinitesimally small." *Blum*, 539 F.2d at 1390. "In such circumstances, where there is substantial likelihood that the derivative action will be used as a weapon in the plaintiff shareholder's arsenal, and not as a device for the protection of all shareholders, other courts have properly refused to permit the derivative action to proceed." *Owen v. Diversified Industries, Inc.*, 643 F.2d 441, 443 (6th Cir.1981) (citations omitted).

■ In the instant case, plaintiff has a pending wrongful discharge action against Westinghouse in which he seeks compensatory and punitive damages. At present, Recchion owns one share of Westinghouse stock. In view of the fact that Westinghouse has 174,770,376 shares of common stock issued and outstanding, Recchion's potential recovery in the derivative action is nil, as compared to his possible recovery in his state action.[1] It is obvious that Recchion's stake in the derivative suit is *de minimus* in comparison with his outside interests.

■ Although Recchion maintains that he feels no vindictiveness towards Westinghouse, the Court finds plaintiff not credible on this point. First, although plaintiff knew about most of the wrongdoings alleged in his complaint as early as 1977 and 1978, plaintiff did not file the first derivative action until 1983 and then only after he had instituted the wrongful discharge action. Second, plaintiff stated that he felt that he could realize his projected earning potential at Westinghouse. Following his resignation from Westinghouse, plaintiff was forced to make a career path change where the potential available to him at Westinghouse is nonexistent.

Finally, no other shareholders of Westinghouse have evidenced any support for the derivative action. *Rothenberg*, 667 F.2d at 962.

Accordingly, the Court concludes that plaintiff does not fairly and adequately represent the interest of the shareholders.

### B. Equitable Considerations

Even where plaintiff has satisfied all the prerequisites to the maintenance of a derivative suit prescribed by Rule 23.1, equitable considerations may impair his ability to sue in federal court. C. Wright & A. Miller, 7A Federal Practice and Procedure § 1834, 396–97 (1972).[2] A number of equitable defenses are applicable in the instant case: (1) unclean hands, and (2) statute of limitations.

### 1. Unclean Hands

■ "[A] shareholder ordinarily will be estopped from suing derivatively if he has participated in the wrong complained of, ratified it, or acquiesced in it." C. Wright & A. Miller, 7A Federal Practice and Procedure, § 1934, 398 (1972). Under the equitable notion of "unclean hands," a party will not be able to obtain equitable relief if he himself has engaged in misconduct. *Tarasi v. Pittsburgh National Bank*, 555 F.2d 1152, 1156 n. 9 (3d Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977); *Gaudiosi v. Mellon*, 269 F.2d 873,

---

**1.** Any recovery in a derivative action belongs to the corporation. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). A shareholder, therefore, receives no direct benefit from a derivative suit, although he may benefit indirectly from the increase in stock value that results from the recovery. *Rothenberg*, 667 F.2d at 960 n. 3. The fact that

plaintiff owns only one share of stock standing alone cannot serve as the basis for dismissing the complaint. *Lewis v. Curtis*, 671 F.2d at 788.

**2.** Most equitable defenses do not operate to bar a shareholders suit; they merely disqualify a particular plaintiff from bringing suit.

881 (3d Cir.), *cert. denied,* 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959).[3] In *Gaudiosi v. Mellon,* the Third Circuit held that in a shareholder's derivative action, "unclean hands" on the part of the plaintiff will require dismissal. *Id.* at 882. The doctrine of unclean hands has been described as follows:

> One who comes into equity must come with clean hands and keep those hands clean throughout the pendency of the litigation even to the time of ultimate disposition by an appellate court.
>
> \* \* \* \* \* \*
>
> The clean hands maxim gives wide sweep to the equity court's exercise of discretion "in refusing to aid the unclean litigant."
> The equity court's "is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."

*Id.* at 881 (citations omitted).

*Gaudiosi* was factually a much more extreme case than the case at bar. In that case, one of the plaintiffs sent a telegram to certain Swiss banks threatening possible legal action and raising violations of certain federal laws.

▪ In the instant case, Recchion has admitted to participating in some of the alleged wrongful conduct alleged in the complaint with full knowledge that his actions were improper and that they did not comply with generally acceptable accounting practices. That such conduct was allegedly done pursuant to his superior's directive does not negate the fact that he too has engaged in misconduct.

In *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949), the Supreme Court discussed the equitable and fiduciary nature of the derivative action:

> Equity came to the relief of the stockholder, who had no standing to bring civil action at law against faithless directors

and managers. Equity, however, allowed him to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own.

> \* \* \* \* \* \*
>
> Likewise, a stockholder who brings suit on a cause of action derived from the corporation assumes a position not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all and the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity.

337 U.S. at 549, 69 S.Ct. at 1227.

The Court concludes that given the purpose of the derivative suit, it would be improper to permit Recchion to sue on behalf of the corporation.

Accordingly, the Court concludes that the doctrine of unclean hands bars plaintiff from being a representative in this action.

### 2. Statute of Limitations

Defendants maintain that plaintiff is not a proper representative since his claims are time barred. The defense of statute of limitations may act as a bar to an action in federal court. C. Wright & A. Miller, 7A Federal Practice and Procedure § 1834, at 397.

A federal court sitting in diversity follows the forum's choice of rules to determine the applicable statute of limitations. *Ross v. Johns-Manville Corp.,* 766 F.2d 823, 826 (3d Cir.1985) (*citing Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). Pennsylvania courts ordinarily apply the Pennsylvania statute of limitations. *Ross,* 766 F.2d at 826. For purposes of the issue before the Court, the parties agree that Pennsylvania law governs and that plaintiff's claims are

---

**3.** This is to be distinguished from the doctrine of *pari delicto* which literally means "of equal fault." Under this doctrine, a transgressor will not be allowed to profit from his own wrongdoing. Thus, a party is barred from recovering

damages if his losses are substantially caused by "activities the law forbade *him* to engage in." *Tarasi v. Pittsburgh National Bank,* 555 F.2d at 1156–57 (emphasis in original) (citations omitted).

governed by the six-year period. 42 Pa.C. S.A. § 5527(6).

The parties also agree that the limitations period commences when plaintiff: (1) has knowledge of the injury; (2) knowledge of the operative cause of the injury; and (3) knowledge of the casual relationship between the injury and the operative conduct. *Berardi v. Johns-Manville Corp.*, 334 Pa. Super. 36, 42, 482 A.2d 1067, 1070 (1984); *cf. Cathcart v. Kenne Industrial Insulation,* 324 Pa.Super. 123, 127, 471 A.2d 493, 500 (1984) *(en banc )*.

██ Recchion became aware of the facts upon which the claims alleged in his complaint are based in 1977, except for the wrongful use of Account 21215, which he learned about in late 1979 or early 1980. However, plaintiff maintains that he did not realize that they were illegal until 1980. In other words, plaintiff maintains that the limitations period does not begin to run until he knows that he has a cause of action, i.e., that someone is legally culpable. This argument was specifically rejected in *Berardi v. Johns-Manville Corp.*, 482 A.2d at 1071.[4]

The Court notes the applicability of the statute of limitations as a defense to most of Recchion's claims. However, since the statute is subject to equitable tolling, the Court does not conclusively determine that plaintiff's claims are time barred. *See Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 487 (3d Cir.1985). Neither does the Court find that plaintiff cannot adequately represent other shareholders on this basis. However, this consideration lends further support to the Court's conclusion that plaintiff is not an adequate representative.

### C. Verification

Defendants move to dismiss on the ground that the amended complaint was not properly verified initially as required by Fed.R.Civ.P. 23.1.

Plaintiff does not dispute that an improper affidavit was initially filed; however, plaintiff testified at the hearing that he reviewed the complaint and amended complaint filed in this case and that to his knowledge the facts are truthful.

The verification requirement "was originally adopted and has served since in part as a means to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them." *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966).

██ In *Lewis v. Curtis, supra,* the Third Circuit held that the verification requirement was satisfied where plaintiff relied on an article in *The Wall Street Journal* since reliance on the article did not constitute an insubstantial investigation. The *Lewis* Court noted that Rule 23.1 is "an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach." 671 F.2d at 787 *(quoting In re Kauffman Mutual Fund Actions,* 479 F.2d 257, 263 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973)). The purpose of the verification requirement is to insure that the plaintiff, or some other person has investigated the claims and found them to have substance, and not to be a general impediment to shareholder derivative actions. *Lewis,* 671 F.2d at 787.

---

**4.** The case cited by both parties deals with personal injury actions arising out of exposure to asbestos. However, the Court finds that the principles are applicable in the instant case. In *Overfield v. Penn Road Corp.,* 146 F.2d 889 (3d Cir.1944), which was a stockholders derivative suit for an accounting against directors for breach of fiduciary duty, where the action was not brought until six years after the commission of any acts complained of, plaintiff's suit was time barred. Where there is an affirmative independent act of concealment, the statute of limitations does not begin to run until discovery, or until discovery could have been made by the exercise of reasonable diligence. *Id.; Saylor v. Lindsley,* 302 F.Supp. 1174, 1180 (S.D. N.Y.1969); *Iacaponi v. New Amsterdam Casualty Co.,* 258 F.Supp. 880 (W.D.Pa.1966), *aff'd.,* 379 F.2d 311 (3d Cir.1967), *cert. denied,* 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1968).

█ In the instant case, plaintiff ultimately filed a proper affidavit. (Docket entry No. 26). Further, plaintiff read the complaint and amended complaint and stated that the facts alleged therein were truthful. The Court concludes that the purpose of the verification requirement has been satisfied in this case and denies defendants' motion to dismiss on this basis.

## D. Demand Requirement

Defendants maintain that plaintiff failed to make a proper demand on the Board of Directors. Rule 23.1 requires that "[t]he complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority, ... and the reasons for his failure to obtain the action...." Rule 23.1 expressly requires that a shareholder's derivative complaint allege either that a demand was made or that demand should be excused since demand would have been futile. *Lewis v. Curtis*, 671 F.2d at 784.

The demand requirement prevents courts from interfering with the internal affairs of corporations until all intracorporate remedies have been exhausted. Thus, the demand requirement furthers a basic principle of corporate organization—that the management of the corporation be entrusted to its board of directors. *Cramer v. General Tel. & Electronics Corp.*, 582 F.2d 259, 274–75 (3d Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). Note, *The Demand and Standing Requirements in Shareholder Derivative Actions*, 44 U.Chi.L.Rev. 168, 171–72 (1976). At the same time, Rule 23.1 recognizes that it is sometimes necessary to have shareholders enforce and indeed assume the directors' duties of corporate governance. However, Rule 23.1 also acknowledges that because shareholders could be overzealous in their enforcement actions, there must be rules to "police the police." *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984). Thus, under Rule 23.1, the shareholder must either make a demand or plead with particularity the exceptional circumstances why a demand would be futile, i.e.,

why the board of directors should not be allowed to decide whether to institute litigation. *Lewis v. Curtis*, 671 F.2d at 784. The Court looks solely to the amended complaint to determine whether the plaintiff/stockholder has met this burden of alleging that demand is excused. *Id.* With these principles in mind, the Court will determine whether plaintiff's demand complied with Rule 23.1 and whether the justification set forth in paragraph 52 of the amended complaint make this a demand excused case.

## 1. Adequacy of the Demand

Defendants contend that plaintiff's March 8 demand letter was inadequate in that (1) the demand letter was not sent to the current Board of Directors; rather it was sent to the individual defendants named in the suit, some of whom are not current members of the Board; (2) since the Court had already dismissed plaintiff's derivative suit in 606 F.Supp. 889, the demand letter was asking the directors to take action in a case that was already pending or on account that had been dismissed; and (3) the instant suit was prematurely filed, i.e., the directors were not accorded sufficient time to act upon the demand and exercise their business judgment as to whether Westinghouse should pursue the claim.

█ Adequacy of demand must be determined on a case-by-case basis. In order to determine whether the demand is adequate, the Court must look to its purpose. *Allison on behalf of G.M.C. v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D.Del.1985). Since the directors are charged with the duty and responsibility to manage corporate affairs, if misconduct has occurred, they should be given the initial opportunity to redress the wrongs unless demand is excused. The purpose of demand is to alert the board of directors so that it can take corrective action if any, as it feels is merited. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533, 104 S.Ct. 831, 837, 78 L.Ed.2d 645 (1984). "At a minimum, a demand must identify the al-

leged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages." *Allison,* 604 F.Supp. at 1117. Upon demand, the board of directors after evaluating the factual allegations may decide to bring suit on behalf of the corporation or the board of directors may decide not to sue. In the event the board decides not to sue, a district court faced with a shareholder derivative suit must decide whether to defer to the board's judgment not to sue and dismiss the case. *Weiss v. Temporary Investment Fund, Inc.,* 692 F.2d 928, 939–42 (3d Cir.1982), *vacated and remanded on other grounds,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984); *Cramer v. General Telephone & Electric Corp.,* 582 F.2d at 274–75.

■ Application of these guidelines to the instant demand leaves the Court to conclude that the demand cannot be considered adequate. Aside from the fact that only some of the members of the board were notified, the board was being asked to take action on a claim that had been dismissed. Assuming *arguendo* that the demand could be considered adequate, the board of directors was not afforded sufficient time to respond to the demand before plaintiff filed suit.

The complaint was filed on May 6, 1985, approximately two months after the last demand letter was sent out. There is no precise rule as to how much time a board must be given to respond to a demand. Adequate time should be allowed for a response. *Nussbacher v. Continental Illinois Nat'l. Bank & Trust Co.,* 518 F.2d 873, 877 (7th Cir.1975), *cert. denied,* 424 U.S. 928, 96 S.Ct. 1142, 47 L.Ed.2d 338 (1976); *Mills v. Esmark, Inc.,* 91 F.R.D. 70, 72–73 (N.D.Ill.1981). Generally, the amount of time needed for a response will vary depending upon the complexity of the issues raised. *See* C. Wright & A. Miller, 7A *Federal Practice and Procedure* § 1831, 377 (1972). In the instant case, the complaint filed at Civil Action No. 83–856

alleged violations of the federal securities laws, including § 10(b) of the Securities Exchange Act of 1934 (the Act), which prohibits insider trading and fraudulent practices in connection with the purchase or sale of a security; § 14(a) of the Act, 15 U.S.C. § 78n(a), which prohibits the solicitation of false and misleading proxy material. The complaint also alleges breach of the defendants' fiduciary duty and common law fraud. Named as defendants are 23 individuals, including Price Waterhouse, a public accounting firm retained by Westinghouse. Given the complexity of these issues, the Court concludes that two months was not sufficient time for the Westinghouse Board to complete an adequate investigation of the items set forth in the demand letter. *See Allison,* 604 F.Supp. at 1118 (2½ months is not enough time).

■ Premature filing of a suit after demand has been made frustrates the policy of Rule 23.1 "that an individual shareholder ordinarily should not usurp the responsibility of corporate management to determine whether and how to pursue a corporate claim." *Weiss v. Temporary Investment Fund, Inc.,* 516 F.Supp. 665, 670 n. 13 (D.Del.1981), *aff'd.,* 692 F.2d 928 (3d Cir.1982), *vacated and remanded on other grounds,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984). Premature filing of suits after demand is made is equivalent to failure to make a demand and warrants dismissal. *Allison,* 604 F.Supp. at 1118; *Mills v. Esmark, Inc.,* 91 F.R.D. at 73. *See Shlensky v. Dorsey,* 574 F.2d 131 (3d Cir.1978).

The Court concludes that the demand made on the board of directors is inadequate.

### 2. Futility of Demand

Having concluded that the demand in this case was inadequate, the Court nevertheless will determine whether demand should be excused, since any demand would be futile.

Plaintiff maintains that:

[A]ny further demand upon the Board of Directors to redress the wrongs complained of would be futile, and in effect, constitute that they bring action against themselves as named defendants. The Board of Directors have not convened since the date of the demand, March 6 to March 8, to take action to redress the wrongs alleged in plaintiff's original action in Civil Action No. 83–856 which are identical to the wrongs alleged in this action because the Board of Directors are antagonistic to plaintiff's claim which adversely involves them in the wrongdoing complained of herein, and they are biased and self-interested in not redressing the matters complained of by plaintiff.

(Amended complaint, ¶ 52 (docket entry No. 12)).

In essence, plaintiff maintains that this is a demand excused case since demand on the Board of Directors would be futile. The futility of making the demand required by Rule 23.1 is determined on the basis of the existing facts at the time the suit is filed. *Vanderbilt v. Geo-Energy, Ltd.,* 725 F.2d at 210–11.

Essentially, plaintiff is relying upon the following justifications to excuse demand: (1) the Westinghouse Board had knowledge of the wrongdoings as early as 1983 and failed to file suit; (2) the director defendants acquiesced in the complained of conduct; and (3) the individual director defendants would not file suit against themselves.

▪ With respect to the first reason, the Westinghouse Board of Director's knowledge of the alleged wrong and failure to institute suit without more is inadequate to excuse demand. *Allison on behalf of G.M.C. v. General Motors Corp.,* 604 F.Supp. at 1113 (citations omitted). Similarly, a general allegation that the board acquiesced in the complained of conduct does not demonstrate demand futility. *Lewis v. Graves,* 701 F.2d 245, 248 (2nd Cir.1983); *Cramer v. Telephone & Electronics Corp.,* 582 F.2d 259 (3d Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).

To the extent that plaintiff asserts that the defendants would not sue themselves, it is well settled that an "allegation that a demand upon the directors would be futile because the directors would be suing themselves is not alone sufficient to excuse demand." *Lewis v. Curtis,* 671 F.2d at 785; *Lewis v. Graves,* 701 F.2d at 249.

▪ Finally, to the extent that plaintiff's allegations can be interpreted as alleging that the directors participated in the underlying wrongdoing or were otherwise biased, in certain circumstances demand will be excused in this case. *Lewis v. Curtis,* 671 F.2d at 784–85. However, plaintiff must state with particularity allegations of participation, self-dealing, bias, bad faith or corrupt motive in order to excuse demand. *Id.* Plaintiff has not made particular allegations of this nature. The mere fact that plaintiff names members of the board of directors or even makes conclusory allegations of director wrongdoing does not suffice to excuse demand. *Id.;* Note, *Demand on Directors in a Shareholders Derivative Suite When the Board Has Approved the Wrong,* 26 B.C.L.Rev. 441 (1985).

Thus, the Court concludes that the allegations in plaintiff's complaint are not sufficient to excuse demand.

The Court's decision rests upon an analysis of federal law. Indeed, the parties have only argued federal law to the Court. It should be noted that there is some difference among courts as to whether state or federal law should be applied when a federal court sitting in diversity is attempting to determine whether a plaintiff seeking to bring a derivative action has satisfied the demand on directors requirement of Rule 23.1. *See,* e.g., *Meltzer v. Atlantic Research Co.,* 330 F.2d 946, 948 (4th Cir.), *cert. denied,* 379 U.S. 841, 85 S.Ct. 80, 13 L.Ed.2d 47 (1964) (federal law) and *Reilly Mortgage Group v. Mt. Vernon Savings and Loan Association,* 568 F.Supp. 1067, 1075 (E.D.Va.1983) (state law). However, since there is no difference between the standards applied under federal and state law, the Court need not address the choice

of law issue. Indeed, several courts have analyzed the issue under both state and federal law. *See, e.g., Allison,* 604 F.Supp. at 1115–16; *Zimmerman v. Bell,* 585 F.Supp. 512, 514–15 (D.Md.1984).

In *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979), the Supreme Court held that federal courts must look to state corporate law, even in cases based entirely on federal law, to determine the powers of corporate directors. *Id.* at 477–78, 99 S.Ct. at 1836–37. Moreover, the Supreme Court has indicated that the source of the demand requirement may be the applicable substantive law and not Rule 23.1; however, the Court found that it need not reach this issue. *Daily Income Fund, Inc. v. Fox,* 464 U.S. at 532 n. 8, 104 S.Ct. at 837 n. 8; *but see id.* at 544 and n. 2, 104 S.Ct. at 843 n. 2 (Stephens, J., concurring) ("The rule [23.1] concerns itself solely with the adequacy of the pleading; it creates no substantive rights."); *Weiss v. Temporary Investment Fund, Inc.,* 692 F.2d 928, 945–46 (3d Cir.1982) (Gibbons, J., dissenting) ("[T]he business judgment rule which Rule 23.1 enforces is not a product of federal substantive law.... The Rule 23.1 demand requirement is, therefore, a procedural device that since *Erie* is animated by the existence of an underlying substantive content."). Based primarily on the principle enunciated in *Burks,* federal courts have used state substantive law to analyze whether the reasons offered by plaintiff for excusing demand are adequate. *See Lewis v. Curtis,* 671 F.2d at 786; *Galef v. Alexander,* 615 F.2d 51, 58 (2nd Cir.1980); *Reilly Mortgage Group, Inc. v. Mt. Vernon Savings and Loan Association,* 568 F.Supp. at 1075. Unfortunately, these decisions did not make clear which Rule 23.1 issues are governed by which law. In *Lewis v. Curtis,* while the Third Circuit cited federal authority for the principle that "mere approval of an allegedly injurious corporate transactions, absent self-interest or bias by a majority of the board, is insufficient to excuse demand," the Third Circuit then stated that state law would determine whether the board members were sufficiently interested in the challenged transaction to excuse demand. 671 F.2d at 785–

86. In other words, the relevant standard of disinterestedness is the same as that used to determine whether a court should defer to the board's business judgment not to pursue a lawsuit on behalf of the corporation.

Application of Pennsylvania substantive and procedural law compels the conclusion that the complaint does not allege facts sufficient to excuse demand. Pennsylvania Rule of Civil Procedure 1506 is similar to the federal rule in all aspects pertinent to this case and provides as follows:

> In an action to enforce the secondary right brought by one or more stockholders or members of a corporation or its similar entity because the corporation or entity refuses or fails to enforce rights which could be asserted by it, the complaint shall set forth
>
> \* \* \* \* \* \*
>
> (2) the efforts made to secure enforcement by the corporation or similar entity or the reasons for not making any such effort.

Pennsylvania similarly requires that prior to instituting suit, a stockholder must make a demand on the board of directors or demonstrate that demand will be futile. *Evans v. Diamond Alkali Co.,* 315 Pa. 335, 172 A. 678 (1934); *Passmore v. Allentown & Reading Traction Co.,* 267 Pa. 356, 110 A. 240 (1920); *Law v. Fuller,* 217 Pa. 439, 66 A. 754 (1907).

In *Evans,* the Supreme Court of Pennsylvania stated as follows:

> [T]he right of an individual stockholder to act for the corporation is exceptional and arises only on a clear showing of special circumstances, among which inability or unwillingness of the corporation to proceed, demand upon the regular corporate management and a refusal to act, are imperative requisites, and the refusal of the corporate management must appear affirmatively to be a disregard of duty and not an error of judgment—a nonperformance of a manifest official obligation amounting to a breach of trust. Where it appears that fraudulent acts, prejudicial to the interests of the corpora-

tion, have been committed, so interwoven with the conduct of the corporate managers and of such nature that it might be presumed the officers would commit a breach of trust in refusing to proceed, a demand is not necessary, as it would be "vain and useless." Ordinarily there is no presumption that the officers will commit such breach of trust, and the charge that they will should rest on acts, affirmative or permissive, duly averred, manifestly in violation of duty, and manifestly the result of fraud and not of erroneous judgment. It is not always necessary for the complaining stockholder to appeal to stockholders at a meeting, but he is in duty bound to make every reasonable effort to prevail on the corporate management to bring action.

315 Pa. at 337, 172 A. at 679 (citations omitted).

Further, plaintiff must show that he has "left undone nothing" which reasonably could prompt the corporate management to bring action. *Wolf v. Railroad Co.*, 195 Pa. 91, 94, 45 A. 936, 937 (1900); *Burdon v. Erskine*, 264 Pa.Super. 584, 587, 401 A.2d 369, 371 (1979).

In *Wolf*, the Supreme Court of Pennsylvania held that in a suit by a stockholder of a leased railroad against the lessee company alleging false and erroneous accounts rendered by the lessee to the lessor, a mere statement that the lessee owned a majority of stock of the lessor and elected its officers who allowed themselves to be "kept in absolute ignorance of its business" was insufficient to excuse demand. 195 Pa. at

95, 45 A. at 937. The *Wolf* Court noted that plaintiff's statement rests on speculation that the directors would violate their fiduciary duty. *Id.*

The Court concludes that plaintiff has not demonstrated that the Court would not defer to the board's business judgment in this case. Although Recchion has named most of the directors as defendants in this case, there are merely conclusory allegations that these defendants are biased. Thus, plaintiff has not alleged sufficient facts to satisfy the Court that these director defendants are personally involved or interested in the alleged wrongdoing in a way that would impair the exercise of their business judgment on behalf of the corporation, or that their refusal to sue reflects a breach of their fiduciary duty. *Landy v. FDIC*, 486 F.2d 139, 149 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (citation omitted).

Upon review of the substantive guidelines provided by the Pennsylvania courts for when demand is excused as futile, application of Pennsylvania law to plaintiff's complaint achieves the same result of application of federal principles—demand is not excused as futile. Accordingly, defendants' motion to dismiss based on an inadequate demand is granted.[5]

## E. Conclusion

The Court concludes that Recchion does not fairly and adequately represent the other shareholders. Further, the demand made on the board of directors fails to

---

5. Defendants raise one further issue in their proposed findings of fact and conclusions of law regarding plaintiff's standing. In view of the Court's disposition of the remaining issues and the fact that it did not order briefing on this issue, the Court does not address it at this time. The Court does note that to the extent that defendants maintain that a shareholder who sells his stock with knowledge of the underlying wrong lacks standing, defendants did not establish that plaintiff was aware of all events alleged in his complaint prior to August 25, 1977, although Recchion did know about most of the events in September of 1977. *See Kenrich Corp. v. Miller*, 377 F.2d 312, 314 (3d Cir.1967). Further, to the extent that defendants argue that a plaintiff who buys a share of stock for the sole

purpose of bringing suit is estopped from suing, it appears that their argument is rooted in Rule 23.1's requirement that plaintiff be a shareholder at the time of suit, a prerequisite not contained in the Pennsylvania Rule. *Compare Lewis v. Knutson*, 699 F.2d 230, 238 (5th Cir.1983) *with Fitzpatrick v. Shay*, 314 Pa.Super. 450, 461 A.2d 243 (1983). Thus, the issue is whether the federal or state rule would govern in this diversity action. As previously noted by the Court, the applicability of federal ownership requirements in diversity actions has received conflicting opinions. *See generally Overberger v. BT Financial Corp.*, 106 F.R.D. 438 (W.D.Pa.1985); C. Wright & A. Miller, 7A *Federal Practice and Procedure* § 1829 (1972).

comport with the requirements and policy behind Fed.R.Civ.P. 23.1 and Pa.R.Civ.P. 1506(2). Application of federal and state law compels the conclusion that demand cannot be excused as futile. Accordingly, defendants' motion to dismiss the amended complaint is granted.

An appropriate Order will be issued.

## JUDGMENT ORDER

AND NOW, this 25th day of March, 1986, upon consideration of Defendants' Motion to Dismiss the Amended Complaint filed in the above captioned matter on December 5, 1985, and upon consideration of the evidence presented by the parties at the hearing held on February 20, 1986,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED and judgment be, and hereby is, entered in favor of the Defendants and against the Plaintiff.

IT IS FURTHER ORDERED that Defendants' Motion to Exclude From the Record Plaintiff's Supplement to Defendants' Exhibit 15 is hereby DENIED.